## ANTHONY O. FERNALD vs. EDWARD N. FRENCH.

### Cumberland.    Opinion December 5, 1921.

*An operator of a motor vehicle intending to cross the street in front of another car,*
*should so watch and time the movements of the other car as to reasonably insure*
*a safe passage, either in front or rear of such car, even to the extent of*
*stopping and waiting, if necessary.   Negligence of driver cannot be*
*imputed to a passenger.   Contributory negligence of defendant*
*must be shown.   Axiom, "Res Ipsa Loquitur."*

This case involves an automobile accident, which took place in plain daylight and in a perfectly open street, at, or near, the junction of the Eastern Promenade and Washington Street in the city of Portland.   The negligence of the driver cannot be imputed to the plaintiff, he being a passenger, and the question of plaintiff's contributory negligence is therefore eliminated.   The alleged negligence of the defendant is the vital question involved.

The defendant kept his right-hand side of the road all the time, until he turned still further to the right to avoid collision.   He had the right of way in passing the mouth of the Promenade, and was charged with the knowledge and expectation that a car might cross his path coming from the Promenade, but not with either knowledge or expectation that a car would cross his path without warning from the other side of the street.   There is no evidence that he was violating the law of speed.   The evidence of the plaintiff shows that the defendant was in all respects a lawful traveler on this road up to the moment of the accident.

In coming to a reasonable conclusion, not only the testimony but circumstances and conditions must be considered.   There is an axiom of law expressed by the phrase "Res Ipsa Loquitur," the thing itself speaks.   So in this case the manner of the accident furnishes inherent evidence of what took place when construed in the light of the law applicable thereto.   The reckless conduct of the plaintiff is established by his own evidence, and there is no evidence tending to prove the negligence of the defendant except that a collision took place.

On motion.   An action to recover damages for personal injuries sustained by plaintiff, a passenger in an automobile driven by his son-in-law, resulting from a collision between such automobile, and that of the defendant, which occurred on Washington Street in the city of Portland, on June 7, 1920, and also to recover damages and expenses resulting from injury to plaintiff's wife, alleging negligence on the part of defendant in driving and controlling his automobile.

A verdict of $2,250 for plaintiff was returned by the jury, and defendant filed a general motion for a new trial.   Motion sustained.

Case is stated in the opinion.

*Bradley, Linnell & Jones,* for plaintiff.

*Frank A. Morey,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

SPEAR, J. This case involves an automobile accident. The plaintiff recovered a verdict and the case comes up on the usual motion.

The plaintiff was a passenger in the car driven by James Wright, his son-in-law.

The negligence of the driver cannot be imputed to the plaintiff and the question of his contributory negligence is therefore eliminated.

The vital question to be considered is the alleged negligence of the defendant.

The accident took place in plain daylight and in a perfectly open street.   It occurred at or near the junction of the Eastern Promenade and Washington Street in the city of Portland.   At this place, Washington Street is forty-four feet wide, with two car tracks running through the center, occupying a width of fourteen feet, thereby leaving fifteen feet in the clear for travel on each side.   The Promenade opens into Washington Street upon the easterly side and has a width on the line of the street of about seventy-five feet.

Washington Street is paved, and the Promenade is macadam to the line of Washington.   Washington Street runs southerly towards Congress Street and northerly toward Falmouth.   The Promenade does not cross Washington Street but leads out of it toward the east.

For convenience, the car in which the plaintiff was riding will be spoken of as the plaintiff car.   The plaintiff car was going southerly toward Congress Street and the defendant car in the opposite direction.   The plaintiff car was occupying its right-hand side of the road until it arrived at a point nearly opposite the middle of the mouth of the Promenade.   It was the particular duty of the defendant to observe whether a car might be coming from the Promenade into Washington Street.   As was said in *Braydon* v. *Kellogg,* 118 Maine, 42, "A somewhat different situation than would arise if they (the streets) crossed each other, forming four corners, in this, that a car

on Main Street (Washington Street) approaching North Street
(the Promenade) is charged with knowledge that a car coming from
North Street (the Promenade) must necessarily turn to the right or
the left into Main (Washington) Street."

The defendant kept the right-hand side of the road all the time,
until he turned still further to the right to avoid collision.

The defendant had the right of way in passing the mouth of the
Promenade. He was, moreover, charged with the knowledge and
expectation that a car might cross his path coming from the Prom-
enade, but not with either knowledge or expectation that a car would
cross his path, by turning into the Promenade, from the other side
of the street, without reasonable warning. There is no proof that the
defendant was violating the law of speed. The evidence of the
plaintiff shows that the defendant was in all respects a lawful traveler
on this road up to the moment of the accident.

In describing the accident we refer only to the plaintiff's evidence,
as the jury had a right to base their conclusions on the plaintiff's
version of how it occurred. But in coming to a reasonable conclusion,
not only the testimony but circumstances and conditions must be
considered. There is an axiom of law expressed by the phrase
"Res Ipsa Loquitur," the thing itself speaks. So, in this case, the
manner of the accident furnishes inherent evidence of what took
place, when construed in the light of the law applicable to this class
of cases.

The plaintiff's version of the accident was that the plaintiff car
was moving along on its own side of the street, with the intention of
turning to the left across the street, into the Eastern Promenade;
that it slowed down and turned to the right of the railroad track for
a car to pass; that after the car had passed and it was about opposite
the center of the Promenade, the driver threw out his hand before
he had crossed the railroad track or made his turn, as testified by
Mrs. Wright; that Wright dropped his hand before he saw French
coming one hundred feet away; that he did not blow his horn; that,
as his forward wheels had just passed the car tracks he saw the defend-
ant, on his own side of the road, about one hundred feet away; that
he then kept right on going; that after he thus saw the defendant he
didn't look for him again until he, Wright, was within the entrance
of the Promenade, and then only when the plaintiff exclaimed with
reference to the proximity of a collision.

The following questions and answers tell the whole story of Wright's negligence and disregard of law.

Q. "You didn't see Mr. French, at all did you, except for the distance when he was back here a hundred feet?"

A. "When I started to cross the road there, I looked and I saw him."

Q. "After that you didn't look, did you, until Mr. Fernald called you?"

A. "No sir."

Q. "So that you approached this only place of actually getting across that street from the car track without turning your eyes in the direction of where Mr. French was?"

A. "Yes sir. I was watching the car. I was looking upon the Promenade. I thought Mr. French could see, or whoever it was."

Q. "Or whoever it was?"

A. "Yes sir. He can't run around blind any more than I could."

Q. "I should suppose, if you were crossing the iron and French was coming, you could see him?"

A. "I thought at the time someone was driving the machine."

These questions and answers prove not only an utter disregard of legal duty but a supercilious indifference to the rights of other vehicles upon the road. And the reason he gives for not observing the movement of the French car only adds to the reckless nature of his act.

Q. "French was right in front of you, all in your sight, from the time you started to cross the track?"

A. "I didn't have time to watch Mr. French, there were too many other machines out that day."

The reason he gives for not watching French is the reason that underlies four-fifths at least of all the automobile accidents that occur, namely, he didn't have time, when the casting of an eye would undoubtedly have saved the collision.

If we now note the measurements it will be seen from the evidence of the plaintiff's engineer that the distance from the car track nearest the opening of the Promenade on the line of Washington Street was only fifteen feet, not more than twice the length of the Ford car in which the plaintiff was riding. Wright testifies that his front wheels were on that track, when he then first saw French. He had an unobstructed view of him all the time. There were "many machines," and yet according to his own testimony Wright turned

directly in the path of the defendant car, when he knew it was coming directly along the right-hand side of the street, without ever once looking up to see whether he could safely pass in front of that car or not.

Time and distance are deceptive and illusive under such circumstances. The whole occurence from the time the plaintiff car saw French until the imminence of collision was the work of but seconds. Wright's estimate that the defendant was one hundred feet away was at best a mere guess. And judging from the proven rate of speed of the two cars, an erroneous guess, at that. If French was one hundred feet away and going at the rate of fifteen miles an hour, it was only five and one-half ticks of the clock before he was in the path of the defendant car. And yet the operator drives blindly in front of that approaching car. This reckless conduct on the part of the plaintiff car is established by the plaintiff's own evidence; not by inference from the evidence but by the plain and ordinary meaning of the testimony.

Up to this point there is not one word of evidence tending to prove the negligence of the defendant except the fact that a collision later took place.

He was driving along as any traveler would on his own side of the road, safe from the danger of approaching cars in front, and as far out to the right as the line of the road would permit for the passage of cars from the rear with the duty of particularly observing the Promenade, when in less than fifteen feet away he was confronted with the defendant car headed directly across his course.

Was, then, the defendant guilty of negligence? This question involves the legal relations of the parties as they were, within a period of six seconds, occupying the street. There was no junction of crossing streets. The Promenade is a wide-mouthed avenue that leads from Washington Street to the Eastern Promenade, so called. It is seventy-five feet wide. Ten cars could turn into it abreast. The law of the road requires all vehicles approaching each other in opposite directions to keep to the right of the middle of the traveled part of the way. The defendant was in observance of that law and was well out on the right-hand side. He had the right of way. He was in the place designated by law for him to travel. There is no evidence that he was driving at an excessive rate of speed. The evidence, in fact, shows that he was driving at a legal rate. The undisputed evidence shows that there was a car just ahead of him. When he

approached at about the middle of the Promenade he was suddenly confronted with the plaintiff's car, at nearly or quite at a right angle, crossing his track directly in front of him. There was nothing so far as the evidence shows to reasonably put the defendant on guard against the sudden appearance of the defendant car or to warn him of its sudden turn across the street. Mrs. Wright testified that Wright put his hand out before she saw the defendant car.

As bearing upon the sufficiency of warning, it must be kept in mind that the distance between the front of the plaintiff car, when it was turned across the railroad track, and the line of Washington Street was less than fifteen feet; and if the defendant car was close to the line of Washington Street, the plaintiff car was less than fifteen feet, by the width of the defendant car, or actually less than ten feet from the direct line of French's path, when the defendant blindly headed across the car tracks, without once casting an eye to observe the position of the oncoming car.

This short distance placed him so quickly in the path of French, that even, if upon cool afterthought, it appeared that he might have stopped his car, yet in the emergency which confronted him he might have reasonably concluded that he could not do so, and that his only course was to turn up the Promenade.

It was the duty, however, of the plaintiff car, under these conditions to give the defendant, who had the right of way, such notice as to amply inform him of its intention to cross in front of him. And unless and until the defendant car had such notice it could not be charged with negligence in pursuing its course.

In fact it should be declared as a rule of law, governing the movement of motor vehicles under the conditions and circumstances of the present case, that a car intending to cross the street in front of another car, should so watch and time the movements of the other car as to reasonably insure itself of a safe passage, either in front or rear of such car even to the extent of stopping and waiting, if necessary. This is no new rule but simply the application of a well established principle to new conditions. In *Savoy* v. *McLeod*, 111 Maine, 234 it is said:

"The court should establish as a law the rule which prevents injury or loss of life rather than that which even invites or permits it. This rule is based upon reason and public policy."

We have gone somewhat in detail in describing the reckless operation of the plaintiff car, not on the ground of contributory negligence, but to show that the defendant was not required to anticipate such carelessness, and was therefore excused from the charge of negligence when he himself was driving his car as a man of ordinary care and prudence would have done in the like circumstances.

Therefore, as was said in the beginning, the thing itself speaks, and we are unable to find any adequate evidence of direct negligence on the part of the defendant up to the time the plaintiff car appeared in front of him in the streets.

Was he guilty of subsequent negligence? Accepting the plaintiff's version of where the collision occurred, it is evident that the defendant, when he saw the imminence of a collision, turned his car to the right into the Promenade, but Wright, the driver of the plaintiff's car said:

"I know he chased me up there. I should say I got there before Mr. French. I got up there when he hit me, before he did. He chased me up there."

Q. "So he chased you right up into the Eastern Promenade?"

A. "Yes sir."

Q. "No doubt about that?"

A. "Not a bit."

If this language is given its ordinary meaning it is foolishly absurd. That the defendant should chase him into the Promenade or anywhere else, for the purpose of running into him, is preposterous. On the other hand, it is apparent from the evidence that, when the emergency of the plaintiff car, directly across his path, confronted French, he immediately turned into the Promenade with the hope of avoiding the collision that appeared inevitable if he kept on, but, as both proceeded up the Promenade, could not turn his car sharply enough to the right to avoid the accident.

It is well settled law that in an emergency a person is not held to that same degree of care as he would be required to observe under normal conditions. *Bragdon* v. *Kellogg*, 118 Maine, 42. An emergency requires quick judgment and instant action, or the inevitable has taken place. We are of the opinion that French was within the rules of due care under the circumstances. He was therefore guilty of neither original nor subsequent negligence. A new trial should be granted.

*Motion sustained.*