G. Kenneth Esponette *vs.* George A. Wiseman.

Kennebec.    Opinion June 26, 1931.

*George W. Heselton*, for plaintiff.
*Locke, Perkins & Williamson*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

PATTANGALL, C. J.   On motion. Action to recover damages for injuries resulting from a collision between a motor cycle operated by plaintiff and a small Ford truck driven by an agent of defend-

ant, admittedly engaged in defendant's business at the time. Verdict for plaintiff. Damages assessed at $7,267.50. No complaint is made as to the amount of the verdict. The sole issue before us is whether or not there is evidence in the case upon which a jury was authorized to predicate liability.

The collision took place on a state highway, the hard surfaced portion of which was twenty-one feet in width. It occurred in the early afternoon of an August day at a point where, ordinarily, there is very considerable traffic. The highway was straight and practically level for a distance of at least four hundred feet south of the point of collision and seventeen hundred feet north thereof. At various points it was crossed by intersecting roads, and there was a filling station and wayside store on its eastern side, in front of which the grounds had been graded to the street level and a gravel driveway built connecting the premises with the highway. It was at the junction of the main road and this driveway that the trouble occurred.

Plaintiff was proceeding northerly toward his home. Defendant's car was proceeding southerly, its destination being the filling station and store above mentioned. Both drivers were familiar with the locus and each was driving on his extreme right until defendant's car came to a point opposite the filling station, when the driver turned to the left and started to cross the highway nearly at a right angle and in the path of the on-coming motor cycle. His car had entered the driveway and proceeded to a point where its rear wheels projected three or four feet beyond the eastern side line of the hard surface portion of the highway when the motor cycle crashed into it with sufficient force to push its rear end northerly a distance of three feet and to severely damage it. The blow was glancing and the speed of the motor cycle such that it proceeded twenty feet beyond the point of contact, where plaintiff was thrown off and fell in the highway twenty feet still farther on. He sustained so severe an injury to his right leg that amputation was later found necessary.

The only eye witnesses to the collision were plaintiff and defendant's agent. Their testimony is sharply conflicting.

Plaintiff testified that he was riding at a reasonable rate of speed, not exceeding thirty miles an hour, on the right-hand side of a level

road with nothing to obstruct his view for more than a third of a mile; that, looking ahead, he saw approaching him, on the opposite side of the way, an automobile and following it, not very closely, the small truck with which he later collided; that the automobile passed him but when he was approximately sixty feet from the truck, it turned sharply to its left and crossed the road directly in front of him, proceeding at an ordinary rate of speed; that, fearing a collision, he immediately applied his brakes, locking his rear wheel; and that, although he did all that could be done to stop the progress of his machine, his efforts in that respect were ineffectual and the collision followed.

The driver of the truck gave a different version. He said that, proceeding along the highway on his right as he approached the filling station, he came to a stop to permit one car going south and another going north to pass him; that the road was then clear excepting that he could see the motor cycle approaching some four hundred feet away; that he then proceeded to cross the highway at a rate of speed which he estimated at three or four miles an hour and did not observe the motor cycle again until its noise attracted him, after he had entered the driveway and when it was too late to avoid contact with it.

Two witnesses observed plaintiff riding by them a few seconds before the collision. One testified that the motor cycle did not appear to be moving unusually fast, the other estimated its speed at thirty-five miles per hour. Whether this was before or after the application of the brakes is not entirely clear and we do not regard this evidence as especially important.

The remainder of the oral testimony, in so far as it bears on the question of liability, relates to certain matters apparently not finally in dispute and to expert evidence concerning operation of motor cycles.

The jury saw and heard the witnesses and were the judges of their credibility. They had a right to accept plaintiff's story of the event as correct in so far as it was not modified or contradicted by admitted facts. To that extent we are bound by its findings but only to that extent. It therefore becomes of vital importance to analyze the undisputed evidence.

It is agreed that marks on the highway plainly show that at a

point sixty-one or two feet distant from the point of contact between the two machines, plaintiff applied the rear brake of the motor cycle and that for at least fifty feet of that distance the wheel was locked, so that it is not disputed that for that distance plaintiff used his utmost endeavor to stop the machine in so far as it was possible to do so by braking it.

One important fact in issue is the distance between the vehicles when defendant's car started to cross the road. If it was four hundred feet, as the driver of the truck testified, he had nothing to fear. Doubtless the jury regarded this distance as grossly, even though unintentionally, exaggerated. The roadway was but twenty-one feet in width. If the rear of defendant's car was within two feet of the edge of the highway when it started to cross and if it had arrived within four feet of the opposite side line when it was struck, it traversed so short a distance that even if it was moving as slowly as the driver states, at the rate of four miles an hour, it would have occupied but three or four seconds in the crossing.

However fast the motor cycle may have been travelling before the application of the brake, its speed must have been materially reduced during the last sixty feet of its journey and no reasonable estimate of that speed, even if this important factor were not taken into account, could place plaintiff at the point indicated by defendant's agent when the truck started to cross the road.

On the other hand, regardless of the rate at which he had been travelling up to the time he applied his brake, it is not unreasonable to suppose that plaintiff's speed would have been so reduced during the time occupied in traversing the sixty feet immediately prior to his coming in contact with the truck that three or four seconds would necessarily have elapsed between the application of the brake and the collision.

The jury may have concluded that defendant's car started to cross the highway when plaintiff was approximately sixty feet distant; that it proceeded as slowly as the driver stated, and therefore predicated a finding of negligence on the part of defendant on these facts. We can not say that such a finding was unjustified.

"It should be declared as a rule of law governing the movements of motor vehicles that a car intending to cross the street in front of another car should so watch and time the movements of the other

car as to reasonably insure itself a safe passage either in front or rear of such car, even to the extent of stopping and waiting if necessary." *Fernald* v. *French,* 121 Me., 4.

"An automobile driver making a left-hand turn and crossing the highway at a point other than a roadway intersection is required to use extraordinary care and caution for the preservation of his own safety and to avoid injury to others." *Onkels* v. *Stogsdill* (Wash), 275 Pac., 692.

But it is not sufficient that plaintiff sustain the burden of proving defendant's negligence. He must also negative lack of due care on his part. It is upon this feature of the case that defendant relies.

The case shows that the motor cycle was being driven at a rate of speed so that the application of the brakes in such a manner as to lock the rear wheel failed to stop it in a distance of eighty feet.

Estimates of speed and distances by the most conscientious witnesses is necessarily inexact, but certain physical facts present evidence which can not be gainsaid. It is admitted that marks on the highway proved beyond any possible doubt that at a point at least sixty feet from the place of collision plaintiff utilized to its full extent the mechanical appliance designed to stop the progress of his machine; that he not only did not succeed in accomplishing that purpose but that at the end of the sixty feet was under such headway that the motor cycle pushed the Ford out of position, crushed one of its wheels, broke one of its springs and the housing of its rear axle, and ran twenty feet farther before it stopped; also that when it did stop, its momentum was such that the driver, a man weighing two hundred pounds, was thrown forward an additional twenty feet.

With these facts in mind, the conclusion is irresistible that plaintiff, at the time defendant's car attempted to cross the highway, was proceeding at a rate of speed absolutely inconsistent with due care.

"The speed of an automobile is excessive whenever it places the car beyond the control of the driver. To drive a car so fast as not to be able to avoid a visible obstruction is negligence." *Knox* v. *Cimmerman* (Pa.), 151 Atl., 678.

Considering the location, the amount of traffic incident to the time and season, the intersecting roads, the filling station with cars

entering and leaving its premises frequently, the duty of having his machine under reasonable control, a duty which always devolves upon the driver of a motor vehicle, should have been impressed upon plaintiff's mind.

"The duty to keep an automobile under control involves the ability to stop within a reasonable distance." *Boumaster* v. *DePree Co. et al* (Mich.), 233 N. W., 395.

"The phrase 'having his car under control' does not necessarily mean ability to stop instantly under any and all circumstances. A car is under control within the meaning of the law if it is moving at such a rate and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity." *Caruthers* v. *Campbell* (Ia.), 192 N. W., 138.

There was evidence tending to show that the course pursued by plaintiff in his attempt to avoid the collision was not such as, under any circumstances, would command itself to the judgment of a reasonably prudent man. An expert called by plaintiff, in direct examination, stated that if the brake was applied with sufficient force to lock the rear wheel, it would be impossible to steer the machine. This was advanced as an answer to the suggestion that plaintiff might have, by a very slight change of direction, passed safely to the rear of the truck.

This witness added that with the rear wheel locked the driver "would have no control"; that the proper way to stop the machine would be to shut off the power and that "if you locked your hind wheel it would be dangerous."

Plaintiff answers this proposition by saying that one faced by an emergency is not held to the exercise of the same degree of judgment as when one is permitted to view a situation calmly and with opportunity to select the best course of conduct to be pursued. But the emergency was not created entirely by the negligence of defendant. In spite of that, had plaintiff been travelling at a speed consistent with reasonable safety and with his machine under control, no emergency would have arisen.

"The rule that the law does not require one acting in an emergency to do the thing which afterwards appears to have been the safest only applies where the emergency is created or caused by the negligence of the other party and not where it is brought about in

whole or in part by the negligence of the injured party himself." *Zellmer* v. *Hines* (Ia.), 192 N. W., 281.

"One may not operate a car at excessive speed so as to prevent its reasonable control in an emergency and be permitted to say, after an emergency arose, that he did all he reasonably could with the means at hand to avoid the injury." *Knapp* v. *Gibbs* (Ky.), 277 S. W., 259.

"The fact that the driver of the car may have done all that could have been done in attempting to stop his car and to avoid a collision after discovering the car in front of him by no means relieves him from the charge of negligence. If his car, at the time of the discovery of the plaintiff car, was travelling at an excessive rate of speed under the conditions presented, the fact that he did all he could to stop, when the manner in which he had been driving had rendered it impossible for him to do so, instead of relieving the defendant subjects him to the charge of negligence." *Davis* v. *Brown* (Cal.), 267 Pac., 754.

We can not but be convinced that the jury entirely overlooked these various propositions, although they were clearly set out in the charge of the presiding Justice. The natural sympathy aroused in the minds of its members by the presence of a young man, who apparently but for this unfortunate misadventure would have enjoyed more than the usual measure of health and vigor, now crippled for life, overcame their ability to analyze the situation correctly.

We reach the conclusion regretfully but unavoidably that plaintiff's own negligence contributed to the happening of the event which caused his injury.

*Motion sustained*