CHARLES S. ERWELL *vs.* THELMA HARMON.

Cumberland.   Opinion, July 7, 1942.

*Jacob H. Berman,*

*Edward J. Berman,* for plaintiff.

*William B. Mahoney,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MANSER, J.   This is an action for personal injury and property damage resulting from an automobile collision. The case comes forward on exceptions to a nonsuit. Two other exceptions relating to the admission of written statements made by certain witnesses, contradictory of testimony given by them, were abandoned.

On Sunday noon, November 18, 1940, the plaintiff, then seventy-five years of age, started from his home on Pleasant Street in Brunswick, driving his 1928 Hupmobile cabriolet. The day was fair. His destination was the golf course, but he intended to extend the courtesy of driving a young lady to the same place. Her home was on Lavallee Street, a side road entering but not crossing Pleasant Street and to the south.

Pleasant Street itself runs east and west and forms a part of the main highway, Route 1, between Brunswick and Portland. In this vicinity the highway is composed of two abutting lanes of concrete slabs, each ten feet in width, and with wide hard-packed gravel sides on the same grade. The road is level and straight, and at its junction with Lavallee Street there is an unobstructed view in each direction of at least a quarter of a mile. Driving westerly and arriving at the junction of the two streets, the plaintiff found Sunday automobile traffic passing along the south side of the highway, and also traffic to his rear. He drove off the concrete slab and to his right and then manipulated his car so that it came to a standstill, headed in the direction of the entrance to Lavallee Street, and with the bumper projecting just over the edge of the concrete. Then with the gears of the car disengaged, the motor idling, he was in the situation of an automobilist about to depart from a private driveway and cross the lanes of both east- and west-bound traffic in order to enter Lavallee Street.

The law charges the driver of a car making such a crossing with the duty of so watching and timing the movements of other cars as to reasonably insure himself and them of a safe passage. *Verrill* v. *Harrington,* 131 Me., 390, 163 A., 266; *Fernald* v. *French,* 121 Me., 4, 115 A., 420; *Esponette* v. *Wiseman,* 130 Me., 297, 155 A., 650.

Going forward with the story of the facts, the east-bound traffic soon cleared. The plaintiff says that to his left he saw the defendant's car approaching, but in his estimation it was then 450 feet away. He fixes the distance by the fact that he also saw pedestrians crossing the road in front of the defendant's car and in line with a public garage and a store on opposite sides of the road, which buildings were 375 feet from him.

He saw nothing about the speed of the defendant's car which attracted his attention. The testimony of the two other eye witnesses gives no indication of excessive speed. One estimated it at 25 to 30 miles an hour and the other at "a fairly good clip."

The plaintiff says he then started his car and kept it moving forward. As the front end of the car was about at the dividing line between the two concrete slabs, he saw that the defendant's car was then 90 to 120 feet away and seemed to be veering to its left. He accelerated his speed but his car had not travelled more than an additional three feet when it was struck on its left side.

The plaintiff testified that he regarded himself as "a very competent judge of distances." Giving full credit to the honesty of his statements, yet his version would portray a physical impossibility, and he cannot thereby exculpate himself. He did not so watch and time and correlate his movements and those of the approaching car as to reasonably insure himself of a safe passage.

There are but two reasonable inferences to be drawn from his testimony and both are fatal to the maintenance of his action. One is that he entirely misjudged the distance between the two vehicles and the other that after seeing the approaching car he delayed his start until it was fraught with danger.

The last inference is the more likely and is emphasized by the testimony of the eye witnesses. Mr. Colbath saw the plaintiff as he prepared to cross the street and did not see the defendant's car until it was within seventy feet of the point of collision. In fact, in his original statement, made a day after the accident, he estimated this distance as thirty feet.

Mr. Lumbert, the other witness, testified that he was proceeding in his own car from Church Road, 300 feet westerly from and parallel with Lavallee Street, out to the Portland highway. He stopped before entering this through way. He saw the plaintiff's car as it stood headed in the direction of Lavallee Street. He saw the defendant's car 300 feet beyond. Then he started up his own car, turned into the Portland road and proceeded toward the point of the accident. He estimated that he was "quite near" or "just about 75 feet" from the two cars when the impact occurred. If this be true, he had started from a standstill, turned into the main highway and travelled 225

feet while the plaintiff claims that during the same time he had not succeeded in clearing a ten-foot slab.

An ingenuous statement made by this witnes tends to clarify the real situation. Having said that the plaintiff's car was stopped when he first saw it, he was asked:

"Q. And then what happened?  A. After a while I noticed him start up" etc.

This clearly indicates a pause of some length, during which the defendant's car and that of the witness were approaching from opposite directions.

The application of the established legal principle to the circumstances of the case rendered it incumbent on the presiding justice to grant a motion for nonsuit. The plaintiff's failure to exercise due care was a proximate cause of the accident. The defendant was entitled to the ruling as a matter of law.

*Exceptions overruled.*