Mrs. Rita Gamache
*vs.*
Thomas Cosco

Androscoggin.   Opinion, March 28, 1952.

*Edward J. Beauchamp,* for plaintiff.

*Robinson, Richardson & Leddy,* for defendant.

Sitting: Murchie, C. J., Thaxter, Fellows, Merrill, Nulty, Williamson, JJ.

Fellows, J.   This action of negligence comes to the Law Court from Androscoggin County Superior Court upon the plaintiff's exceptions to a directed verdict for the defendant.

The plaintiff, Mrs. Rita Gamache, testified that on September 1, 1950 she was driving her Chevrolet automobile northerly on Lisbon Street in the city of Lewiston towards the intersection of Lisbon and Chestnut Streets. At the same time the defendant was proceeding southerly on Lisbon Street toward the intersection. It was her intention to turn left, at the intersection, onto Chestnut Street. Chestnut Street runs easterly and westerly. When the plaintiff came to the intersection the traffic light was red. She stopped her car on the right hand lane of Lisbon Street two or three feet back of the curb line of Chestnut Street. There were two lanes on Lisbon Street, one for northerly traffic and one for southerly.

The plaintiff said that it was raining at the time of the accident, and that there was no traffic near the intersection other than the truck of the defendant going southerly and the car of the plaintiff going northerly.

When the red traffic light changed to green the plaintiff started her car. She says she saw the defendant coming, but she thought he was a "long ways off." Where, and at what time, with regard to the collision, the plaintiff saw the defendant's truck, if she actually saw it, she did not say. She made no estimate of distances. She did not testify that she gave any indication of her intentions to turn left, or any warning to the on-coming truck, or to a car that might be following her. She did not attempt to go to, or to pass beyond, the center of the intersection, but sharply turned left, into the southwest quarter of the intersection from the position where she had stopped for the red light, and directly in the path of the on-coming defendant's truck. She does not testify that she made any attempt to time the movement of the defendant's vehicle and that of her own, so as to reasonably insure safe passage for both vehicles. She said "I saw the green light went on and I looked around and there wasn't any other cars in view so I started and then suddenly

saw that truck coming down. *** I saw he was coming pretty fast so naturally I stopped *** and he hit me right in front." She testified there were no cars on her left and no cars on her right. She said the defendant's truck was at all times on its right and proper side of Lisbon Street. The damage to the plaintiff's car was on the left front fender and the left side of the grill. She stated that she did not see the truck at all until after she had started. John A. Perreault, Jr., called by the plaintiff, testified that he was at the corner of Chestnut and Lisbon Streets and that he saw the defendant's truck coming to or through the intersection at a rate of 20 to 25 miles an hour. The plaintiff's car was hit on the left front side at an angle "it had to be an angle because she was turning. Couldn't hit her straight on." On cross examination one question was "Do you know whether the collision stopped the cars?" Perreault answered "Yes it did." Later Perreault said that he thought she was stopped when the collision occurred but "part of that truck was in my way. I can't tell you exactly."

With the witness Perreault, a blackboard chalk was evidently used, and counsel made the oft repeated error of having a witness state, with reference to a temporary drawing on the board, that he "crossed over right here" and "there is no car there," which statements are of no value to a reviewing court, without definite location with regard to place of accident, or some approximate distances from one point to another, appearing in the record. Counsel should have in mind that unless care is taken, when a chalk is used, the printed record will not show facts that might be vital in some cases, although not important in the case at bar. In this case the story of the plaintiff and the important portions of the testimony from Perreault can be understood. This decision must also, and necessarily, be based on the plaintiff's own testimony as to her due care, or lack of it, and the negligence, if any, of the defendant.

Upon the close of the plaintiff's case, the defendant rested his case and moved for a directed verdict which was granted.

The statute requires that when the driver of a vehicle intends to turn to the left at an intersection, the driver "shall approach such intersection in the lane for traffic to the right of and nearest to the center line of the way, and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left. For the purpose of this section the center of the intersection shall mean the meeting point of the medial lines of the ways intersecting one another." Revised Statutes (1944), Chapter 19, Section 107.

The burden of proof is upon the plaintiff to prove her own due care, and that no lack of care on her part contributed to her injuries. She admittedly failed to obey the law by not attempting to pass beyond the center of the intersection, as the statute requires of a driver who intends to turn left. This is very strong evidence of contributory negligence. It "creates a presumption of negligence." *Bolduc* v. *Garcelon,* 127 Me. 482; *Dansky* v. *Kotimaki,* 125 Me. 72; *Rouse* v. *Scott,* 132 Me. 22; *Berry* v. *Adams,* 145 Me. 291, 75 Atl. (2nd) 461.

The driver of an automobile at an intersection must watch and time the movements of his own car and that of an approaching vehicle to insure safe passing. A driver also owes the duty to the driver of the other vehicle to signal the intention to turn left. *Kennedy* v. *Flagg,* 145 Me. 399, 75 Atl. (2nd) 850; *Esponette* v. *Wiseman,* 130 Me. 297, 155 Atl. 650; *Erwell* v. *Harmon,* 139 Me. 47; *Verrill* v. *Harrington,* 131 Me. 390, 163 Atl. 266.

The record in this case plainly shows that the plaintiff was guilty of negligence. Had she obeyed the statute, when

she reached the intersection of Lisbon and Chestnut Streets, and passed beyond the center, the defendant's truck would have gone through the intersection, or would have been out of the plaintiff's path. She turned or "cut" left suddenly and without warning before she reached the center. She either did not see the defendant's truck with seeing eye and attentive mind, or she saw and failed to time her own movements with the movements of the defendant. Not only did she fail to observe the law, but there is no evidence that she exercised any of the care to be expected from the ordinarily careful and prudent driver of an automobile.

The plaintiff in her bill of exceptions and in brief of counsel claims that even if she was negligent, the doctrine of the "last clear chance" is applicable to the facts in this case. The claim is based on the plaintiff's testimony that she started on the green light, turned sharply left and "suddenly saw that truck coming **** so naturally I stopped," and she claims it was then possible for the defendant to have passed on either her right or on her left. Her own testimony, however, negatives the possibility that the defendant could have avoided the collision.

The "doctrine of last clear chance" or "the doctrine of discovered peril" only applies *after* the defendant has discovered, or should have discovered, that the plaintiff is in a position of peril. The defendant must also have the time and opportunity to avoid the accident, after the plaintiff's negligence has ceased, or in a case where the plaintiff's negligence is too remote. The negligence of the defendant must be the last negligence, and it must be the proximate cause. It cannot be invoked unless the defendant has a clear chance to avoid, after the plaintiff's negligence has ceased, or ceased to be of any vital importance because remote. It is not only the *last* chance but it must also be a *clear* chance. *Barlow, Pro Ami* v. *Lowery*, 143 Me. 214.

The record does not show that the negligence of the defendant, if in fact it can be construed that he was in any manner negligent, was the proximate cause of this accident. The plaintiff does not testify that the defendant was far enough away from her when she turned into his path and "suddenly" saw him, so that he could have stopped. She argues there was room for him to pass to her left or right because she saw no other cars, except for a car parked at the curb. She testified that she started. She turned sharp left. After she started she saw the defendant "suddenly." She says she stopped "just over the center line of Lisbon St." ** "I must have passed over a little. I don't know. I don't remember, it happened so quickly."

The defendant had no "last clear chance" to avoid the plaintiff. The record does not show that the defendant had any chance whatever. He had neither time, nor opportunity to see that the plaintiff had placed herself, or was about to place herself, "in peril" and to avoid her. She turned quickly to the left into the path of the defendant before reaching the intersection center, and she made no signal to indicate her intention, nor any effort to gauge distances or speeds. She either hit the defendant, or, if she stopped, as she claims, she stopped so suddenly in his immediate path that he had neither time nor opportunity to avoid her. Under any view of the plaintiff's testimony, her negligence was either a "continuing negligence," or, it was negligence so fresh and immediate in time and so near in space, that it was not "remote" as the last clear chance doctrine requires. The fact that it was the plaintiff's left front fender and left side of the front grill that was damaged, forcibly if not conclusively argues against the plaintiff's contention. There was nothing, so far as the evidence shows, to reasonably put the defendant on guard against the sudden appearance of the plaintiff's car in his own proper and legal path, or to warn him of its sudden unlawful and negligent turn to the left. The record indicates that

he was "guilty of neither original nor subsequent negligence." *Fernald* v. *French,* 121 Me. 4, 10.

The verdict directed for the defendant in the Superior Court, by the justice presiding, was correct and proper.

*Exceptions overruled.*