**Reny MOSES of Waterville, County of Kennebec, State of Maine, Guardian of Henry Moses, Jr., of said Waterville, Plaintiff,**

v.

**SCOTT PAPER COMPANY of Chester, Pennsylvania, Bates Manufacturing Company, Inc. of State of Delaware, Kennebec River Pulp and Paper Company, Inc. of State of New York, Milstar Manufacturing Corporation of the State of Delaware, and The Commonwealth System, Inc., of the Commonwealth of Massachusetts, Defendants.**

**Civ. No. 9–186.**

United States District Court
D. Maine, S. D.
Feb. 8, 1968.

Julius B. Levine, Morton A. Brody, Waterville, Me., for plaintiff.

Joseph B. Campbell, Augusta, Me., Richard D. Hewes, Edward T. Richardson, Jr., Harrison L. Richardson, Jr., Portland, Me., Brown, Wathen & Finn, Augusta, Me., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DIRECTION FOR ENTRY OF JUDGMENT

GIGNOUX, District Judge.

This is an action to recover damages for personal injuries and property damage sustained by the plaintiff's adult ward, Henry Moses, Jr., as the result of an automobile accident which occurred on June 15, 1966, at approximately 8:30 a. m., at the intersection of Route 11 (also known as Route 137) and the Country Club Road, so called, in Oakland, Maine, between an automobile driven by Henry Moses, Jr., and an automobile driven by Otis Z. Bacon. Plaintiff alleges that at the time of the accident Bacon was acting within the scope of his employment by all the defendants except the defendant The Commonwealth System, Inc., rendering said defendants liable for any damages caused by Bacon's negligence under the doctrine of *respondeat superior*. Plaintiff also alleges that the automobile being driven by Bacon at the time of the accident had been rented by the defendant Commonwealth to one of Bacon's employers, rendering Commonwealth also liable for any damages caused by Bacon's negligence, pursuant to 29 M.R.S.A. § 1862 (1964).

At a pre-trial conference held on October 10, 1967, the parties waived jury trial and agreed that a separate trial be had of: (1) the issues of liability and damages, and (2) the issues of agency and Commonwealth's statutory liability. The parties also agreed that if the Court should find for the plaintiff against the defendants for an amount of damages not in excess of $200,000, judgment would be entered against the defendants without hearing or determination of the issues of agency and Commonwealth's statutory liability, these issues to be tried only if the Court finds for the plaintiff in an amount in excess of $200,000.

At a final pre-trial conference limited to the issues of liability and damages, held on December 26, 1967, the parties agreed that there was no question as to the jurisdiction of this Court; that the allegations of the complaint, to the extent admitted by the answers, were true; and that the Court should receive and determine first the evidence with respect to the issue of liability, and thereafter hear and determine the evidence with respect to the issue of damages if the liability issue is resolved in favor of the plaintiff. The parties further agreed that the accident occurred when the Moses car, which was proceeding westerly on Route 11, started to make a left turn into the Country Club Road, and collided with the Bacon car, which was proceeding easterly on Route 11.

Having considered the evidence and arguments with respect to the issue of liability presented by the parties at a trial held on February 1 and 2, 1968, the Court now makes its findings of fact and conclusions of law and directs entry of its judgment, as follows:

### FINDINGS OF FACT

The Court's findings of fact are:

1. On June 15, 1966, at approximately 8:30 a. m., Henry Moses, Jr. of Waterville, Maine, was the operator of a 1962 Ford four-door sedan proceeding westerly on Route 11 in the Town of Oakland, Maine; Otis Z. Bacon was the operator of a 1965 Chevrolet station wagon proceeding easterly on Route 11; and a collision between the two automobiles occurred at the intersection of Route 11 and the Country Club Road, so called.

2. At the time and place of the accident, both Route 11 and the Country Club Road were public highways; the weather was clear; the road surfaces were dry; it was daylight; the visibility was excellent; and it was not unusually windy. Route 11 was a four-lane bituminous concrete highway running in a generally easterly and westerly direction between Waterville and Oakland, Maine; its paved surface was approximately 54 feet wide; each lane was between 13 and 14 feet wide; the eastbound and westbound lanes were separated by a painted double yellow barrier line; the curb and passing lanes in each direction were in turn separated by a painted broken white dividing line; and there was a gap in the barrier and dividing lines in the area of the intersection of Route 11 with the Country Club Road. The posted speed limit on Route 11 was 45 miles per hour. It had a 2% downgrade from west to east. There was a clear and unobstructed view along Route 11 in both an easterly and westerly direction for a distance of at least 500 feet from its intersection with the Country Club Road. The Country Club Road intersected Route 11 from the south approximately at a right angle and did not continue across Route 11 to the north. It was controlled by a stop sign.

3. At the time of the accident, Henry Moses, Jr. was 32 years old. He was in good physical condition except that he had only light perception in his right eye. He was wearing both prescription glasses (to correct the vision in his left eye) and sun glasses. He had left his home in Waterville shortly after 8:00 a. m. for the purpose of taking a gun for repair to a local gunsmith. Otis Z. Bacon was 45 years old. He was an engineer employed by the owners of the Brassua Dam, so called, to supervise the operation of the Kennebec River. He was in good physical condition, except that he had had tuberculosis and wore ace bandages on both legs to relieve some leg discomfort of an undisclosed nature. He had left his residence in Oakland at approximately 8:00 a. m.;

had stopped briefly at a Chevron Service Station on Route 11 approximately 9/10 of a mile from the scene of the accident; and was proceeding to his office in Waterville. There were no passengers in either the Moses or the Bacon car, and there are no other known eyewitnesses to the accident. Both Moses and Bacon were thoroughly familiar with the area, having driven through it many times. Both of their cars were in good mechanical condition.

4. Immediately prior to the accident, Henry Moses, Jr. was proceeding in a westerly direction along Route 11 in the westbound curb lane, at a speed of between 20 and 25 miles per hour. Otis Z. Bacon was proceeding in an easterly direction along Route 11 straddling the dividing line between the eastbound curb and passing lanes, at a speed of between 55 and 65 miles per hour. There was no other traffic on the highway. Without giving any signal or other warning, Moses, after entering the area of the intersection of Route 11 with the Country Club Road, made a left turn from the westbound curb lane across the westbound passing lane and into the eastbound passing lane of Route 11 in the direction of the Country Club Road, proceeding at a speed of approximately 15 miles per hour. When Bacon saw the Moses car making a left turn into his path of travel, he immediately applied the brakes on his car and attempted to veer to the right in an effort to avoid a collision. He was unable to turn right because his brakes locked, and his car skidded straight ahead a distance of 96 feet before making contact with the Moses car. When Moses became aware of the approaching Bacon car, he immediately applied his brakes in an effort to avoid a collision. The brakes locked, and his car skidded in a straight line for a distance of 5 feet 4 inches before it made contact with the Bacon car. The cars met at a point in the dividing line between the eastbound curb and passing lanes of Route 11, within the gap in the broken line at the intersection. The colli-

sion involved the left front of the Bacon car and the right front of the Moses car, the paths of the cars intersecting at an angle of between 120 and 130 degrees. At the moment of initial contact the speed of the Moses car was approximately 10 miles per hour, and the speed of the Bacon car was in excess of 40 miles per hour. The force of the collision caused the Moses vehicle to be rotated counter-clockwise through a three-quarter circle while being displaced 40 feet or more easterly on Route 11. The Bacon automobile was deflected in a southerly direction by the collision and traveled somewhat more than 30 feet after initial contact before coming to rest near the southerly side of Route 11.

## DISCUSSION

In order to recover in this action the plaintiff must prove that Bacon was negligently operating his car and that his negligence was a proximate cause of the accident. Even if, however, negligence of Bacon was a proximate cause of the accident, if Moses was equally at fault the plaintiff cannot recover. 14 M.R S.A. § 156 (1964) as amended, (1967 Supp.).

### 1. *Bacon's Negligence*

In the view which this Court takes of the evidence, there is little doubt but that immediately prior to the accident Bacon was driving at a speed substantially in excess of the 45 miles per hour posted speed limit on Route 11. As defendants' counsel concedes, Bacon's testimony that his speed was between 35 and 45 miles per hour is incredible in light of the uncontroverted physical evidence of a 96 foot skid mark to the point of impact, the force of the impact, and the subsequent movement of the two cars. However, while the testimony of J. Stannard Baker, the plaintiff's accident reconstruction expert, was impressive, the Court is not persuaded that Bacon's speed was as excessive as the 70 to 76 miles per hour estimated by Baker. His estimate of the angle of impact, which he determined by photogrametric

methods, and his estimate of the retardation or drag factor of the highway surface, which was based on tests conducted with a police cruiser car a year and a half after the accident, represent judgment factors which must be evaluated in the light of his evident partiality as a witness. From all the evidence, the Court has concluded that Bacon's speed was most probably somewhere in the range of 55 to 65 miles per hour.

Because of his excessive speed, which was substantially greater than the posted speed limit, Bacon was unquestionably negligent in the operation of his car. 29 M.R.S.A. §§ 1251, 1252; Nadeau v. Perkins, 135 Me. 215, 193 A. 877 (1937). This Court is also satisfied that Bacon could have avoided a collision if he had been driving within the posted speed limit, and that therefore his negligence was a proximate cause of the accident. However, considering the highway, weather, and traffic conditions at the time, there is nothing in the present record to support plaintiff's allegation that Bacon's speed was so great as to constitute wanton misconduct, see Blanchard v. Bass, 153 Me. 354, 139 A.2d 359 (1958); Cooper & Co. v. American Can Co., 130 Me. 76, 153 A. 889 (1931), which would permit plaintiff to recover regardless of Moses' negligence. Blanchard v. Bass, supra.

Plaintiff has asserted that in addition to his speed, Bacon was also negligent because he was straddling the dividing line between the eastbound curb and passing lanes in violation of the provisions of 29 M.R.S.A. § 991 (1964), which requires that on a highway laned for traffic, vehicles shall be driven as nearly as practicable within a single lane. While, concededly, Bacon was driving in violation of this statute, it is plainly designed for the safety of overtaking traffic and not for the protection of traffic approaching from the opposite direction. There is clearly no causal relationship between Bacon's violation of the statute and the present accident. See Elliott v. Montgomery, 135 Me. 372, 197 A. 322 (1938).

■ Plaintiff also alleges that Bacon was negligent because he was inattentive, failed to keep his car under proper control, and was driving while in a defective physical condition with respect to his legs and chest. There is no evidence that Bacon was inattentive, or that, apart from his excessive speed, he did not have his car under proper control. Nor is there any basis in the present record for the plaintiff's contention that there was any causal relationship between Bacon's physical condition and this accident.

## 2. *Moses' Negligence*

■ Turning then to a consideration of Moses' negligence, it is uncontroverted that he made a left turn from his position in the westbound curb lane of Route 11 across the westbound passing lane and into the eastbound passing lane, without any signal or other warning of his intention to do so. In so turning, he violated 29 M.R.S.A. §§ 994 and 1191 (1964). Furthermore, it is a well established principle of Maine law that a car intending to cross a highway in front of another car "should so watch and time the movements of the other car as to reasonably insure itself of a safe passage, either in front or rear of such car even to the extent of stopping and waiting, if necessary." Fernald v. French, 121 Me. 4, 9, 115 A. 420 (1921); Gamache v. Cosco, 147 Me. 333, 336, 87 A.2d 509 (1952). The only conclusion which this record permits is that Moses, before committing himself to his left turn, either failed to look to determine whether there was another car approaching in the opposite direction; or if he did look, he failed (very possibly because of his impaired vision) to see the approaching Bacon car, which was there plainly to be seen; or, if he did look and see the Bacon car, he failed (again very possibly because of his impaired vision) accurately to estimate its distance and speed, and, in effect, gambled on being able to cross the eastbound lanes before the Bacon car reached the intersection. Under any of these circumstances, Moses was negligent in attempting to make a left turn through the intersection, and his negligence in doing so was the major cause, if indeed it was not the sole cause, of the accident.

■ Only one further comment is necessary. Plaintiff argues that he is entitled to invoke the doctrine of last clear chance to permit his recovery in this action. However, even if the doctrine of last clear chance still has viability under the present law of Maine (See Pomeroy, "Some Problems Arising from Maine's 'Comparative Negligence' Statute as Indicated by Experience in Other States" (unpublished paper 1965)), it applies only when the negligence of a plaintiff has come to rest and negligence of a defendant is the only proximate cause of an accident. Gamache v. Cosco, supra at 337–338, 87 A.2d 509. It has no application where, as here, negligence of the plaintiff continues to the time of impact and is, together with the defendant's negligence, also a proximate cause of the accident. Ibid; cf., Barlow v. Lowery, 143 Me. 214, 219, 59 A.2d 702.

■ For the foregoing reasons, the Court is compelled to the conclusion that this accident and the resulting damage sustained by Moses were the result partly of his own fault and partly of the fault of Bacon, but that Moses was at least equally at fault, and therefore the plaintiff cannot recover. 14 M.R.S.A. § 156 (1964) as amended, (1967 Supp.).

## CONCLUSIONS OF LAW

The Court's conclusions of law are:

1. This Court has jurisdiction of the action and of the parties thereto.

2. Otis Z. Bacon was negligent in operating his car at an excessive rate of speed at the time of the accident; and his negligence was a proximate cause of the accident and of Henry Moses, Jr.'s resulting damages.

3. The negligence of Otis Z. Bacon was not such as to constitute wanton misconduct.

4. Henry Moses, Jr. was negligent in attempting to make a left turn from

the curb lane, without giving signal or other warning, and without first ascertaining that such a turn could be made with safety; and his negligence was also a proximate cause of the accident and of his resulting damages.

5. The accident and the resulting damages sustained by Henry Moses, Jr. were the result partly of his own fault and partly of the fault of Otis Z. Bacon, the fault of Henry Moses, Jr. being at least equal to that of Otis Z. Bacon.

6. The plaintiff is not entitled to recover of the defendants in this action.

## DIRECTION FOR ENTRY OF JUDGMENT

In accordance with the foregoing findings of fact and conclusions of law, it is

Ordered, adjudged and decreed that judgment be entered for the defendants against the plaintiff dismissing the action with prejudice and without costs, and the Clerk of this Court is hereby directed to make entry of such judgment forthwith.