Stanley L. BLAISDELL

v.

Raymond R. REID.

Supreme Judicial Court of Maine.

March 1, 1976.

Marden, Dubord, Bernier & Chandler, by Donald H. Marden, Waterville, for plaintiff.

Mahoney & Robinson, by M. Roberts Hunt, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

On a sunny afternoon in October the plaintiff was driving his empty dump truck east on Route 100 (a two-way, two-lane highway) in the town of Benton, intending to make a left turn across the lane used by westbound traffic into Pleasant Street which enters Route 100 at a right angle. He stopped a moment opposite Pleasant Street to permit three westbound vehicles to pass and at this time he could see a fourth westbound automobile which was

coming down the hill toward him. This car was then about 500 to 550 feet away. On the basis of that brief observation he did not form any judgment as to the speed of the approaching car. The plaintiff put his truck into gear (3rd gear, low range) and started his left turn and was entering Pleasant Street when he was struck by the car. This car was driven by the defendant.

The plaintiff did not see the defendant's car from the time of his first observation until immediately before his truck was hit. He candidly explained his failure to note further the progress of the approaching car by saying:

"I saw that car coming down the hill, and I made my turn, and I didn't look at that car, because I had no idea he could get there before I'd get in on Pleasant Street."

The jury could have found from the evidence that the defendant's car was in fact approaching at a very high rate of speed. One of the crucial issues presented to the jury was whether the plaintiff was in the exercise of due care in starting to make and continuing to make his turn across the westbound lane without attempting to evaluate the speed of the approaching vehicle.

Six of the jurors found that the defendant was guilty of negligence and two that he was not. Two found causative negligence on the part of the plaintiff and six did not. A judgment was entered for the plaintiff and the defendant's motion for a judgment N.O.V. and for a new trial were denied. The defendant has appealed. We sustain his appeal.

As the plaintiff prepared to make his left turn into Pleasant Street he was obligated to observe the strict cautionary doctrine announced in *Fernald v. French,* 121 Me. 4, 9, 115 A. 420, 422 (1921) which declared[1]

"that a car intending to cross the street in front of another car, should so watch and time the movements of the other car as to reasonably insure itself of a safe passage, either in front or rear of such car even to the extent of stopping and waiting, if necessary."

The defendant insists, on appeal, that the plaintiff's admitted failure to comply with this rule is negligence as a matter of law and that the Justice did not correctly instruct the jury as to the plaintiff's responsibilities in this respect. The plaintiff answers that the rule should not apply in situations where the approaching vehicle is so distant that a driver may reasonably assume the oncoming vehicle could not traverse the distance at *any* speed. Tacitly conceding that no such great distance separated the vehicles here, the plaintiff argues that the rule announced in *Richards v. Neault,* 126 Me. 17, 135 A. 524 (1926) entitled him to assume that the driver of the other vehicle would obey the law and not drive at an excessive speed, in which case the plaintiff would have safely crossed the westbound lane.

Our Court has several times recognized the principle that a driver entering an intersection in a position favored by the law by virtue of the presence of a stop sign, a green light or the statutorily declared right of way may assume that the other driver will not enter the intersection in violation of law *until circumstances develop which show the assumption to be unwarranted. Moore v. Fenton,* Me., 289 A. 2d 698 (1972); *Goldstein v. Sklar,* Me., 216 A.2d 298 (1966); *Ward v. Merrill,* 154 Me. 45, 141 A.2d 438 (1958).[2]

---

1. This principle has been reiterated many times since *Fernald* and is unquestionably viable. *Esponette v. Wiseman,* 130 Me. 297, 302, 155 A. 650, 653 (1931); *Kennedy v. Flagg,* 145 Me. 399, 400, 75 A.2d 850, 850–51 (1950); *Gamache v. Cosco,* 147 Me. 333, 336, 87 A.2d 509, 511 (1952).

2. While we have recognized the applicability of the *Richards* rule to the question of a plaintiff's negligence in situations other than a plaintiff's right of way at an intersection, the Court cautioned in *Field v. Webber,* 132 Me. 236, 245, 169 A. 732, 736 (1933) that a driver overtaking and passing another vehicle

The philosophy underlying this rule was succinctly expressed in *Moore v. Fenton, supra* at 707, to be that

"consistently with the generalized duty that he exercise due care for his own safety, one who has the legal right of way has the right to exercise it in fact by operation of his motor vehicle without being continually on guard to anticipate that other drivers will violate the law, or otherwise operate negligently, in relation to the legal right of way."

We have not previously been called upon to consider the interrelationship of the rules announced by *Fernald* and by *Richards*.

█ The situation of the driver who has a legally declared right of way (and is entitled to "drive with a degree of faith", as we said in *Moore*) bears little resemblance to that of the driver who, when turning left against oncoming traffic, not only has no right of way but is also charged by law with an affirmative duty to "so watch and time the movements of the other car as to reasonably insure [himself] of a safe passage." In the first situation, the driver is entitled to presume the absence of danger (until the contrary appears); in the second, he is given the duty to discover whether danger does or does not exist.

While the words "reasonably insure" clearly mean something short of absolute certainty of a safe crossing, we feel impelled to say that the rule was intended to require an actual effort to evaluate the apparent speed of the approaching car. The words "watch and time" can have no other meaning and a demand for extraordinary care and caution is by no means unreasonable in view of the hazard inherent in crossing a lane that is being used by oncoming traffic where no traffic controls are present.

at an intersection "may rely somewhat that drivers of other vehicles will be obedient to law [and not make a left turn into his path in an illegal manner] but not implicitly." In *Sanborn v. Stone*, 149 Me. 429, 434, 103

Of course, the principle that one need not anticipate another's unlawful driving may be of *limited* applicability to the situation of a person intending such a left turn. A jury may find that such a driver who has observed and evaluated the progress of the oncoming car and concluded that he may safely pass in front of it may then, under some circumstances, assume that its speed will not be increased from a legal to an illegal rate before his crossing can be completed.

The plaintiff testified frankly that he did not watch and determine the speed of the approaching car. On appeal, he argues that he was entitled to assume that the defendant was coming at a rate of speed no greater than that which was legal at that place and that such a legal speed would have permitted a safe crossing.

The presiding Justice instructed the jury as to the plaintiff's duty to watch and time the movements of the approaching car but his language made it appear applicable only to situations where the approaching party was driving at a legal rate of speed. He added to his statement of the plaintiff's duty:

"provided that the vehicle was travelling at an ordinary and prudent rate of speed"

and

"if the defendant was properly observing the law under the circumstances."

Defendant's counsel objected to the Court's instruction as to the plaintiff's duty to observe and the Justice gave a further instruction, the summarizing sentence of which was:

". . . [S]o, you must determine, from all of the testimony, whether or not the Plaintiff made the turn believing,

A.2d 101, 105 (1954) a plaintiff who was shovelling snow two feet within the limits of the street was held to be entitled to assume that an approaching automobile would be driven carefully until the contrary appears.

as an ordinary prudent man would have believed, under the circumstances, that he could have made the turn in sufficient time, *had the Defendant been operating properly,* so that there would not have been an accident; . . ." (Emphasis added.)

Although defendant's counsel made no further objection (M.R.C.P., Rule 51(b)), his previous objection had made clear the area of the instruction to which he objected and the Justice's response only repeated, in different words, the legal proposition to which counsel had objected. No further objection was necessary.

▄▄ We can only conclude that the Justice's language left the jury with the erroneous impression that an assumption that an approaching car would be travelling at a legal speed would relieve the plaintiff of the duty to so "watch and time" its movements as to reasonably insure a safe crossing. As a proper understanding of this principle is essential to a correct resolution of the issue of the plaintiff's fault or lack of fault,[3] the case must be retried.

The entry will be:

Appeal sustained.

Remanded for new trial.

All Justices concurring.

3. We also do not find in the language of the Justice any indication that even in situations where the law entitles the driver to assume that the other driver will not drive negligently, the right to that assumption continues only *"until the contrary appear[s]." Goldstein v. Sklar, supra* at 300.