ORA D. VERRILL *vs.* MINNIE HARRINGTON.

MATTIE C. VERRILL *vs.* MINNIE HARRINGTON.

HAROLD E. VERRILL *vs.* MINNIE HARRINGTON.

LEONA W. ABBOTT *vs.* MATTIE C. VERRILL.

EDWARD HARRINGTON *vs.* MATTIE C. VERRILL.

MINNIE HARRINGTON *vs.* MATTIE C. VERRILL.

York.     Opinion December 15, 1931.

*Willard & Willard*,
*Ray P. Hanscom*, for Harringtons.
*Waterhouse, Titcomb & Siddall*, for Verrills.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

STURGIS, J. These actions grow out of an automobile collision which occurred on September 25, 1931, in the town of Wells. In the Superior Court, where the cases were tried together, the jury brought in verdicts for the plaintiffs in the several suits against Minnie Harrington and for the defendant in the cross actions against Mattie C. Verrill. General motions for new trials filed in each case come forward in a single record.

The accident occurred in front of the Rosemere Tea Room located on the westerly side of the state highway which, at this point, has a three strip concrete surface thirty feet wide with gravel shoulders on each side, and runs practically north and south without substantial curve or grade. There are two entrances from the highway into the Tea Room grounds, each approximately thirty-five feet wide, with a space between them of ninety-two feet.

As Mrs. Verrill, accompanied by Ora D. Verrill, her husband's mother, and her own infant child, attempted to enter the northerly

driveway to the Tea Room in the Oldsmobile sedan which she was driving, her car was struck by a Nash sedan carrying Leona W. Abbott as a passenger and operated by Mrs. Minnie Harrington. The automobiles were traveling in the same direction. They came together at the westerly edge of the concrete or on the gravel just outside and stopped at practically right angles to each other in the ditch beyond the driveway. Both were badly damaged.

The occupants of each car seek to recover damages from the driver of the other automobile. Harold E. Verrill sues for his expenses and loss of consortium resulting from the injuries to his wife, Mattie C. Verrill, and also for damages to his car which she was driving. Edward Harrington sues for money expended for the care of his wife, Minnie Harrington, and for the loss of her consortium.

The story of the accident given by Mrs. Verrill is that, coming up from Wells Beach by the Mile Road, so called, she turned her car into the state highway and drove northerly in the right-hand lane. She says:

"I went along at about twenty-five miles an hour and as I got near the entrance to the Rosemere Tea Room I looked in my mirror and saw that there was no car near me in the rear, and I knew that I had a clear way ahead of me, and I put out my hand and turned to the driveway, and got my front wheels into the driveway of the Rosemere Tea Room when I heard the sound of one horn and a crash instantly."

It seems that she intentionally passed the southerly driveway and attempted to go into the northerly entrance of the Tea Room in order that she might turn her car there for her return trip. She says she looked in her mirror before swinging across the highway and the only cars she saw following her were several hundred feet back. There was no traffic coming towards her. She claims she was driving twenty-five miles an hour in the right lane and slowed down to fifteen miles to make the turn. On cross examination, she testified:

Q. From the time you came up around the turn at the Mile Road how many times did you look in your mirror to see if there was anybody following you?

A. I don't recall but once.

Q. And on that occasion you say that you saw some cars in the distance?

A. Yes, sir.

Q. How near were you to the drive that you were to turn in when you looked in your mirror?

A. Just a bit before it, I would say.

\* \* \* \* \*

Q. But when you first looked in your mirror, as I understand it, you were northerly of that southerly entrance?

A. Yes, sir.

Q. And you were proceeding at about twenty-five miles an hour?

A. I might have been slowing down to make my turn.

Q. And you saw cars coming?

A. Yes, sir.

Q. And you didn't look again?

A. I looked before making my turn.

Q. And at the time you did look you were northerly of the southerly entrance here? You had passed that entrance, had you?

A. Yes, sir.

Q. And was still remaining on your slab of the road? Is that right?

A. Yes, sir.

Q. Now, in order to make that entrance there, as a practical proposition, you have to go pretty well up to it and make rather a sharp turn, don't you?

A. I didn't make a sharp turn.

\* \* \* \* \*

Q. As a practical proposition, you had to keep on your own side of the road in order to get the width of road to get in there with sort of a new moon turn or half circle?

A. Half circle.

Q. And that day, from the time you looked in your mirror, after having passed the southerly entrance, from that time

until the collision you didn't look in your glass again after that; except that once?

A. No.

Mrs. Harrington testifies that, as she drove her Nash car from Ogunquit to her home in Kennebunk, she slowed down at the Mile Road, picked up speed again and, coming up to the Verrill car which was traveling at a lower rate of speed, turned from the right into the middle lane and, as she attempted to pass, without any warning, Mrs. Verrill pulled her car in front of her and across the road. Mrs. Harrington states that she "jumped" on her brakes and threw her car to the left, but they came together. She says that she pulled into the middle slab to pass just as she got by the southerly entrance, gave four quick blasts of her horn and, somewhere between the two driveways to the Tea Room, put on her brakes. Her judgment is that her brakes were on a distance of fifty-five feet back from the point of collision. She estimates her speed as she started to pass at thirty-five or thirty-eight miles an hour.

Several witnesses describe tire marks on the concrete and in the gravel which appeared to them to indicate the course which the Harrington car followed after the brakes were applied and the distance it went before and after the collision. The inferences which may be drawn from the location of these marks do not materially conflict with the testimony of the witnesses. Assuming that the marks were seventy to eighty feet long, as stated by a traffic officer, without evidence as to the rate of retardation which would result from the application of the brakes of the Harrington car, and there is none, any conclusion as to speed based on the marks is more or less speculative. The position and condition of the cars after the accident is also of limited probative value.

The state highway in Wells is divided into three lanes, each ten feet wide, those on the outside being for traffic going in opposite directions, the one in the middle for the passing of vehicles. It is well known that this use of the road is established by regulation and enforced. When Mrs. Harrington attempted to pass the Verrill car, she turned into the middle lane and blew her horn. She not only had no reason to anticipate that the car she was about to pass would swing across the road in front of her, but every reason to

believe to the contrary. Mrs. Verrill had passed by the first drive-
way, through which cars coming from the south would naturally
be expected to enter the Tea Room grounds, and it is admitted that
she proceeded straight ahead in the right-hand lane for some dis-
tance without in any way indicating that she intended to turn.
Drivers of cars coming up behind her at that time had the right
to assume that she would continue on, or at least remain in the lane
she was traveling.

When Mrs. Verrill began her "half circle" turn across the con-
crete, she was bound to use reasonable care in guarding against a
collision with cars approaching from behind. Her turn took her
almost immediately into the middle lane, over which cars desiring
to pass had the right of way. She looked in her mirror and saw cars
back in the distance, but evidently gave no consideration to cars
coming up the middle lane outside the range of the mirror's re-
flection and obscured from view by the back of her own car. Her
testimony is that a glance in her mirror was the single precaution
she took before extending her hand and making the turn.

It is familiar law that the operator of a motor vehicle intending
to cross the street in front of a car coming from the opposite direc-
tion on its own right of way must give notice of the intention to
cross in order to charge the driver of the other car with negligence
in pursuing its course. The law charges the driver of the car mak-
ing such a crossing with the duty of so watching and timing the
movements of the other car as to reasonably insure himself of a
safe passage either in front or rear of such car, even to the extent
of stopping and waiting if necessary. *Fernald* v. *French*, 121 Me.,
4, 9, 115 A., 420; *Esponette* v. *Wiseman*, 130 Me., 297, 155 A.,
650. No less strict rule can be applied to operators attempting to
cross the right of way of cars coming from behind. Reasonable
care must be exercised in ascertaining their presence in the passing
lane. The precautions above stated must then be taken.

The argument of counsel, as we understand it, is that, when Mrs.
Verrill looked in her mirror just before she turned, the Harrington
car was one of those following behind several hundred feet, and so
great was its subsequent speed that it traveled that distance and
reached the point of collision while the Verrill car, going at the rate

of fifteen miles an hour, went diagonally across twenty feet of cement in little, if any, more than a second of time. The mechanical perfection of the automobiles of today has not yet produced such speed. A reasonable interpretation of the evidence places the Harrington car close up to the Verrill car as the latter made its turn. They were traveling the main trunk line highway and not in the compact or built-up section of the town. There were no cars approaching from the opposite direction and, as already stated, the conduct of the driver of the car ahead indicated to Mrs. Harrington that two lanes were and would continue to be open and unobstructed. Under these circumstances, there is no credible evidence that she was driving at excessive speed when she started to pass or thereafter failed to exercise the care which could be reasonably expected of a person confronted with the turn of a car directly in front of him, creating an emergency requiring the quickest of judgment and instant action.

We are convinced that the weight of the evidence clearly indicates that the negligence of the defendant Mattie C. Verrill was the sole proximate cause of this accident. The verdicts in all these cases are based on a finding directly to the contrary. They are manifestly wrong and must be set aside. In each case, a new trial is granted and the entry is,

*Motion sustained.*