LETHA BEDELL

*vs.*

ANDROSCOGGIN & KENNEBEC RAILWAY COMPANY.

Androscoggin.     Opinion, February 1, 1935.

*Benjamin L. Berman,*
*David V. Berman,*
*Donald C. Webber,* for plaintiff.
*Skelton & Mahon,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J.   On motion and exceptions by defendant. Action of negligence resulting from a collision between an automobile and an electric car in the evening of December 18, 1933, at the junction of Sabattus Street and Campus Avenue in the City of Lewiston.

Sabattus Street, running easterly, is crossed by Campus Avenue, running northwesterly. Defendant's railway is located on the south side of Sabattus Street and runs easterly across Campus Avenue but shortly before it reaches the avenue there are a switch and curved section of railway connecting the Sabattus Street line with one running on the easterly side of Campus Avenue. Approaching the switch, Sabattus Street has a twenty-five foot width of macadam, and a descending grade of two and a half to three per cent.

On this night (about 9:30), the defendant's one-man-operated electric car came easterly on Sabattus Street and stopped at the switch, where it was accustomed to stop and let off and take on passengers. Some passengers alighted. Then the motorman shut the door, entered the interior of the car, turned the register, started to go to the controls, looked back through the left windows

of the car and saw an automobile (not the plaintiff's but one immediately ahead of it) about two hundred feet distant coming towards him. He continued on to the controls, started the car forward into the switch and commenced to take the curve and cross Sabattus Street. When it had gotten partly across (just how far was in dispute), the plaintiff's automobile, then being driven by one Bunker, ran into the left rear end of the electric car and was injured, on account of which the owner, not then present, seeks recovery of damages in this action. That evening the plaintiff had loaned her automobile to her brother, who, in turn, had let Bunker take it for his use. The estimated maximum rate of speed of the car on the curve was three miles per hour and of the automobile as it proceeded down Sabattus Street, slippery from ice, was fifteen miles per hour.

The plaintiff charges two distinct acts of negligence, viz: (1) Carelessly and negligently operating "its said electric car as to cause same to be propelled suddenly and without warning around the said curve into Campus Avenue, so that said electric car proceeded directly in front of the automobile, . . . so that the plaintiff's said automobile collided with the electric car, . . ." and, (2) negligently and carelessly causing "its said electric car in its progress across said Sabattus Street to be brought to a stop directly in the course of the plaintiff's automobile, causing the said plaintiff's automobile . . . to collide with said electric car. . . ." Proof of the defendant's alleged negligence as the proximate cause of the collision as set forth in either count is sufficient to justify the jury's verdict for the plaintiff.

It is conceded that following *Robinson v. Warren,* 129 Me., 172, 151 A., 10, it was not incumbent upon the plaintiff herein to prove lack of contributory negligence and that were Bunker, the driver of the automobile, negligent, his negligence is not imputable to this plaintiff, a bailor, the bailment not being for carriage.

So now we must determine whether or not the verdict for the plaintiff is manifestly wrong. It is not necessary to discuss at length the duty that rests upon a motorman, as he starts his car from the right side of a street to make a left turn across it, for this Court already has stated:

"Having his car so under control the motorman is required at all times to exercise due care and vigilance to avoid collisions, especially at crossings, and he must before making a crossing stop if necessary to avoid a collision with an approaching automobile or other vehicle, which is itself lawfully controlled. His duty is analagous to that of the driver of a motor car who crosses a street from right to left to enter a connecting road or driveway." *Dill* v. *Railway Co.*, 126 Me., 1, 3, 135 A., 248; *Denis* v. *St. Ry. Co.*, 104 Me., 39, 70 A., 1047.

Even more recently, with reference to the duty of the driver of a motor car who crosses a street from right to left, our Court has declared:

"The law charges the driver of the car making such a crossing with the duty of so watching and timing the movements of the other car as to reasonably insure himself of the safe passage either in front or rear of such car, even to the extent of stopping and waiting if necessary. *Fernald* v. *French,* 121 Me., 4, 9, 115 A., 420; *Esponette* v. *Wiseman,* 130 Me., 297, 155 A., 650. No less strict rule can be applied to operators attempting to cross the right of way of cars coming from behind. Reasonable care must be exercised in ascertaining their presence in the passing lane. The precautions above stated must then be taken." *Verrill* v. *Harrington,* 131 Me., 390, 395, 163 A., 266, 268; *Reid et al.* v. *Walton et als.,* 132 Me., 212, 168 A., 876.

The record discloses the following credible evidence on which the jury, without being manifestly wrong, could have found actionable negligence upon the part of this defendant: That Sabattus was a city street of considerable traffic, with an appreciable down grade, and its macadam surface then, to the knowledge of the motorman, in a very slippery condition, extremely hazardous for automobile use; that this curve of the railway effected not simply a crossing of Sabattus Street but as well the intersection of the two streets; that its car in leaving the switch would, before making the turn to the left, for a short distance proceed straight ahead

as though to keep along on the railway on Sabattus Street and thus tend to mislead the driver of an automobile following it; that, although before starting the car from the switch, its motorman had looked back and had seen the headlights of an approaching car, yet, afterwards he did not look again to ascertain if any automobile were coming with which there might be a collision, but proceeded blindly across the street, when the jury, no doubt, must have found that the plaintiff's automobile was so close at hand that the collision was imminent and that it resulted because the motorman did not exercise the required due care to ascertain the presence of the approaching car and "to watch and time its movements."

It is true that the operator of an electric car is not always bound to stop when he sees an approaching car, but if he sees or should see an automobile approaching so closely to his car that it is or would be reasonable to believe that there will be a collision unless he stops, then an observance of due care requires him to stop. In crossing a street the motorman must have his car under such control that it may be stopped to avoid collision with the operator of an automobile who himself is in the observance of due care. In this case, although contributory negligence *as such* played no part in the determination of the case, the jury may have found that the driver of the automobile was not negligent; that he was proceeding carefully and slowly at a rate not exceeding fifteen miles per hour; that he saw and watched the movements of the electric car; that as it left the switch it appeared to be going straight ahead when suddenly and without warning it turned to the left and proceeded directly across in front of the automobile when it was impossible for its driver in the exercise of due care to avoid colliding with the electric car.

Counsel for the defendant in their brief claim to have demonstrated mathematically (building on the premise that the automobile was proceeding five times as fast as the electric car) that the statement by the plaintiff's witnesses that the automobile was only four or five lengths behind the electric car when it started to make the turn could not have been true, but that, on the contrary, it must have been some three hundred feet back, at which distance, they say, the motorman, without giving warning or looking back,

would not have been guilty of negligence. Finding no fault with the mathematical solution of the problem on the facts, assumed for its demonstrative purpose, yet unless the jury found the same facts, its application herein would avail nothing. The claimed mathematical demonstration is based only on estimates, both of rates of speed and distances covered. Change any of these estimates—bases of the problem—and the proffered mathematical solution becomes inapplicable. The speeds either of the automobile or the electric car, as finally determined by the jury, we can not know, nor have we any way of determining what the jury found the facts to be as to distances covered either by the electric car after starting or by the automobile from where it was when the car started to the place of collision. In conflict was the evidence both as to where the rear of the car was when it started and where it stopped as well as how far back was the automobile when the car started. The jury was warranted in believing that when the motorman finally caused his car to enter the switch and to proceed to cross Sabattus Street the automobile was well within his vision and close at hand else there would have been no collision. The defendant has failed to show any manifest error upon the part of the jury in finding the defendant guilty of negligence and for that reason the motion can not be sustained.

## EXCEPTIONS

Both exceptions are to the denial of the presiding Justice to give the jury certain requested instructions.

### EXCEPTION 1

The request: "The operator of the electric car was not bound to stop when he saw an approaching car." This request was properly denied. *Dill et al., Admr.* v. *A. & K. Railway Co.*, 126 Me., 1, 135 A., 248, is cited as authority for the correctness of the requested instruction. In that case, the Court said: "The motorman is not bound to stop *whenever* he sees an approaching car," which is a very different statement of the law from that requested. The use of the word "whenever" clearly indicates that there are times when the operator must stop to be in the observance of due care

and other times when he need not, depending upon the particular facts and circumstances attending the situation. This request was altogether too broad. Had it been given, the jury erroneously would have received a statement of law that the operator need not stop when he saw an approaching car, regardless of the imminence of a collision and the ability of the motorman by stopping to avoid it. The following language taken from the brief of the defendant's attorneys affords justification for the denial of this request, viz.: "The motorman was not bound to stop his electric car and wait for the automobile to pass unless while under proper control it was so close that to enter across its course might in natural consequence bring about a collision." As a general rule, for application to unstated facts, this request was altogether too indefinite to be given to the jury as a proper instruction.

## Exception 2

Request: "The jury is entitled to consider whether or not the automobile was being operated improperly, carelessly or negligently in order that they may determine whether or not the conduct of the driver of the automobile was such that the operator of the electric car was not bound to anticipate it or guard against it." We believe the requested instruction contains a correct statement of law. Had it been given and had the plaintiff excepted to the giving of it, he would take nothing by his exception.

While in this case, as above stated, negligence of the plaintiff, if there were such, would not have been a defense, yet, so far as it affected and bore upon the negligence of the defendant, the facts tending to show such negligence were not only admissible evidence but should have been considered by the jury. Insofar as such negligence affects and qualifies the duty of the defendant, even though in a case where lack of contributory negligence need not be proven to establish liability, such negligence is a matter for the jury's consideration. *Dill* v. *Railway Co.*, 126 Me., 1, 4, 135 A., 248.

The defendant, however, takes nothing by this exception, even though the request might well have been granted, because of other language in the charge, which has received our careful study, and

in which the substance of the request was correctly given to the jury. The defendant has not been prejudiced by the failure to give this requested instruction.

The Court stated in the charge as follows:

"Having his car so under control, the motorman is required at all times to exercise due care and diligence to avoid collisions, especially at crossings, and he must, before making a crossing, stop if necessary to avoid a collision with an approaching automobile or other vehicle *which is itself lawfully controlled.*"

Again, this language:

"The trolley car or electric car is engaged in a public service and the motorman has duties to his own passengers, who are entitled to receive speedy transportation, and he the motorman *may assume, at all events until the contrary appears, that approaching automobiles will be driven carefully.*"

Likewise:

"It is also true, as I said to you before, that the motorman had the right all the time to assume that the driver of an approaching automobile, this one, if this one was the one that he saw the lights of, *would not commit a negligent act.*"

The above quotations from the charge clearly show that the jury must have understood that, in determining negligence upon the part of the defendant, it had the right and it was its duty to consider whether or not the automobile was being operated improperly, carelessly or negligently.

The presiding Justice, having already given the substance of the request, was not bound to repeat it in the language of the attorney. The defendant takes nothing by either exception.

*Motion overruled.*
*Exceptions dismissed.*