MICHAEL WHITE, PRO AMI
*vs.*
STANLEY A. SCHOFIELD

———

STANTON WHITE
*vs.*
STANLEY A. SCHOFIELD

Franklin.   Opinion, September 16, 1957.

80

*Berman & Berman,* for plaintiff.

*Frank W. Linnell,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

WEBBER, J. These two cases were tried together by a jury below and are before us on exceptions and motions for new trial. Exceptions raise the same issues in both cases

and will be first considered. The bill of exceptions (identical in all material respects in each case) furnishes a sequence of events which effectively raise legal issues and which may be briefly summarized as follows:

1. Jury trial at the May term of the Superior Court, 1956, resulting in plaintiffs' verdicts.

2. During the term, on July 5, 1956, denial by the presiding justice of motions for new trial addressed to him.

3. Final adjournment of the term on the same day, July 5, 1956.

4. In vacation on July 12, 1956 motions for new trial addressed to the Law Court filed by defendant.

5. In vacation on August 10, 1956 ordered by the justice who had presided at the May term that the transcript of evidence be filed on or before September 10, 1956.

6. In vacation on September 4, 1956 the transcript of evidence filed and the cases marked by the clerk "Law." (As shown by docket entries incorporated by reference in the bill of exceptions)

7. At the October term, 1956 motions filed by plaintiffs for judgment on the verdicts. Motions granted and exceptions thereto seasonably prosecuted.

The plaintiffs contend that there was no compliance by the defendant with the provisions of Rule 17 of the Revised Rules of the Supreme Judicial and Superior Courts (147 Me. 464, 470) with respect to the filing of a transcript of the evidence. In essence, the plaintiffs argue that the justice who had presided at the May term was on August 10, 1956 without authority to fix a time for filing the transcript. The defendant insists that a proper interpretation of Rule 17 authorizes the action of the justice who presided at the May

term, and that a transcript filed in pursuance of that order was filed seasonably. We note that another issue is raised, which, although not argued by either party, must be considered here. After filing of the transcript and the marking of the cases "Law," did the Superior Court retain jurisdiction to order judgment upon the verdicts?

In this case, the defendant, after adverse verdicts, filed motions for new trial addressed to the presiding justice in accordance with the provisions of R. S. 1954, Chap. 113, Sec. 60. This he did during the term as required by the statute and by Rule 17. The presiding justice, having considered the matter in termtime, could render his decision during the same term, or during the ensuing vacation, or at the next term. In this instance, his order denying the motions was filed on the last day of the term and just prior to final adjournment. Under the statute and rule *(supra)*, defendant had ten days after the order was filed in which to file new motions addressed to the Law Court. Defendant waited but seven days to avail himself of this right. His motions alone, however, would not be effective without the filing of a transcript of the evidence. Rule 19A provides: "No case at law in which a report of the evidence is required for the Law Court shall be marked 'Law' until such report has been filed." Rule 17 provides the time for such filing.

> "When such motion is addressed to the Law Court, the party making it shall cause a report of the whole evidence in the case to be prepared, signed by the presiding justice or authenticated by the certificate of the official court stenographer, and filed within such time as the presiding justice shall by special order direct, and, if no such order is made, it must be done within thirty days after the adjournment of the term at which the verdict was rendered or within thirty days after the filing of the motion, whichever is later; if not so done, the motion may be regarded as withdrawn, and the clerk, at a subsequent term, may be directed to enter judgment on the verdict."

The first issue before us will be resolved by a determination of the meaning of the words "presiding justice" as used in the quoted paragraph. For it will be noted that the justice here exercised authority and fixed a time for filing the transcript of evidence during the ensuing vacation and not while he was "presiding" over the term.

Rules of Court are designed primarily to implement procedural statutes, discourage procrastination on the part of litigants and their counsel, and provide a smooth and orderly flow of litigation. They are not to be so interpreted as arbitrarily to destroy rights of appeal and review. R. S. 1954, Chap. 103, Sec. 15 provides in part that among the cases which come before the Law Court, sitting as a court of law, are "cases in which there are motions for new trials upon evidence reported by the justice." R. S., Chap. 113, Sec. 190 provides in effect that a transcript of the evidence certified by an official court reporter will suffice without the signature of the presiding justice. R. S., Chap. 113, Sec. 60, already noted, provides for the time of filing motion to the Law Court. These statutes must be read together in order to ascertain what authority the Legislature conferred on the several justices of the Superior Court and what meaning must be given to the quoted words in Rule 17 which implement these statutes. It is obvious that the Legislature intended to provide a litigant, aggrieved by an adverse jury verdict, with an avenue to the Law Court which would remain open to him for ten days after the filing of an adverse decision on a similar motion by the justice who presided over the trial. The Legislature contemplated that the record would be required and might be supplied by an official court stenographer. It is obvious that in many instances it would not and could not be known until long after the adjournment of the term whether the decision of the justice below on the motion addressed to him would be adverse to the movant, whether there would be any resulting necessity of addressing a motion to the Law Court, or what

length of time might be reasonably required by the court reporter for preparing the transcript. For example, a motion addressed to the presiding justice might be taken under advisement and no decision filed thereon until the last day of the *next term* of court. The ten day period then allowed to the movant would carry the filing date for a motion to the Law Court into the *second vacation*. There is surely no occasion for fixing a time for the filing of a transcript until the motion itself has been filed. Rule 17 merely establishes the mechanics of pursuit of the remedy established by the Legislature. Since there must be an end to litigation, Rule 17 provides that the transcript must be filed within thirty days after the adjournment of the term at which the verdict was rendered or within thirty days after the filing of the motion, whichever is later, in any case where no special order for filing is made. We hold, however, that this time may be enlarged by special order of the *justice who presided over the trial*. He is the person designated by the words "presiding justice" to supervise the mechanics of obtaining a "report of the evidence." Such special order may be made at any time during said (alternative) thirty-day period. We think also that it is implicit in Rule 17 that such justice may during the period fixed by his special order further extend the time for filing the record. Only thus can the mechanics be provided to make available the remedy by dual motion for new trial provided by statute. Rule 17 must be so interpreted as to be rescued from absurdity. *Greaves* v. *Houlton Water Co.*, 143 Me. 207, 212.

It appears, therefore, that in the instant case the justice who presided when the verdicts were taken seasonably (within thirty days after the filing of the motion addressed to the Law Court) fixed the time for filing the transcript and that order was complied with.

The cases of *Poland* v. *McDowell*, 114 Me. 511, and *Bradford* v. *Davis*, 143 Me. 124, do not govern this situation.

They deal with exceptions rather than motions. The controlling statute, R. S. 1954, Chap. 106, Sec. 14, specifically provides that exceptions must be filed during the term and not later than thirty days after the event which gives rise to the exceptions. Neither the statute nor the requirement of rigid adherence to it is unreasonable in view of the fact that the aggrieved party knows during the term that the necessity of exceptions has arisen. No undue hardship is imposed by the requirement that he reserve during the term the right to file an extended bill of exceptions and the record in support thereof at some later time to be fixed by the presiding justice. Even in the case of exceptions, however, it has been deemed necessary to resort to legal fiction in order to preserve the remedy from destruction by mechanical breakdown. When the extended bill of exceptions is finally allowed at a time subsequent to that fixed by the justice, there is a "conclusive presumption" that the time was properly extended and all requirements were met. *Bradford* v. *Davis, supra; Poland* v. *McDowell, supra; Carey* v. *Bourque-Lanigan Post No. 5 et al.*, 149 Me. 390, 394. Thus we see that even in the case of exceptions, where the justice has acted to preserve the remedy after his authority has technically ceased, all doubts are resolved by his action in favor of that preservation.

Turning now to the jurisdiction of the Superior Court to order judgment upon the verdicts, we are satisfied that such action could not be taken. Upon the motions for new trial addressed to the Law Court, a transcript having been filed, the cases were marked "Law" upon the docket of the Superior Court. This entry by statute effectively terminated the authority of the Superior Court to do more than continue the cases until their determination by the Law Court. R. S. 1954, Chap. 103, Sec. 15. Nothing remained to be done there except for the clerk of the Superior Court to certify the cases to the clerk of the Law Court at least ten days before its next term, a purely ministerial act. A ques-

tion such as is here raised as to whether the transcript was seasonably filed would thereafter be determined by the Law Court. Only thus is the orderly judicial process of review assured. If certification to the Law Court is premature, no transcript having been·filed, the Law Court will take the appropriate action to dismiss the case from its docket. See *Wayne* v. *DeCoster & Stevens,* 140 Me. 192, 196. That a case once transferred to the docket of the Law Court stands automatically continued in the Superior Court was clearly indicated in *Savings Bank* v. *Alden,* 104 Me. 416 and *Stowell* v. *Hooper,* 121 Me. 152. Purported action taken in the Superior Court thereafter and before any determination or order of the Law Court is a nullity. See *Powers* v. *Rosenbloom,* 143 Me. 408. The matter is jurisdictional and we reach the issue upon our own motion.

Having concluded that under the authority inferentially vested by the several pertinent statutes and expressly conferred by Rule 17, the justice who presided when the verdicts were taken properly fixed the time for filing a transcript of the record, and having further concluded that the Superior Court was without authority to order judgment on the verdicts after transfer by docket entry of the cases to the jurisdiction of the Law Court, we are compelled to hold that the exceptions must be sustained. It follows that the motions for new trial are in order for consideration.

These cases arose out of an automobile accident. Plaintiff Stanton White was the operator of a vehicle and his son Michael his passenger. In the process of making a left turn across the highway, the White vehicle was overtaken by and in collision with the defendant's automobile which sought to pass on plaintiff's left. Considering the evidence most favorable to plaintiff, the jury could have found the following facts. The plaintiff driver admittedly failed to give any signal of his intention to turn to the left across the highway as required and prescribed by R. S. 1954, Chap. 22, Secs.

123, 124 and 125. Failure to give the warning signal when required is prima facie negligence. Plaintiff had traversed a long straight stretch of road which gave him visibility to the rear for about a quarter of a mile. He looked back for this distance, about thirteen hundred feet, when he was about one hundred feet from the point where he started his left turn. He saw no vehicle to his rear. He was then proceeding at about thirty-five miles an hour. While traversing the next one hundred feet he gradually reduced speed to about twenty miles an hour. He then looked to his rear again as he started his turn and saw the defendant's car about five hundred feet behind him. It would thus appear that if the defendant had traveled from a point out of sight at the first observation to the point where plaintiff saw him five hundred feet away while the plaintiff was traversing about one hundred feet, the defendant was traveling at least eight times as fast as the plaintiff which on its face is incredible. Plaintiff testified that while making his left turn he traveled from forty to fifty feet at a speed decreasing from twenty to ten miles per hour, and was then struck by the defendant's car. Again affording the plaintiff every possible advantage, it would nevertheless be necessary for the defendant to have traveled the last five hundred and fifty feet at a speed at least eleven times as fast as that of the plaintiff. This result likewise is highly improbable. The only possible inference which can be drawn from the evidence is that the plaintiff either failed to look before starting to turn to the left, or looking, failed to see the defendant where he must certainly have been, much closer behind him than he now admits. The duty owed by one making a left turn to one seeking to overtake and pass from the rear has many times been stated. *Bedell* v. *Railway Co.*, 133 Me. 268, 271, states:

> " 'The law charges the driver of the car making such a crossing with the duty of so watching and timing the movements of the other car as to reasonably insure himself of the safe passage either in front

or rear of such car, even to the extent of stopping and waiting if necessary. *Fernald* v. *French,* 121 Me. 4, 9, 115 A. 420; *Esponette* v. *Wiseman,* 130. Me. 297, 155 A. 650. No less strict rule can be applied to operators attempting to cross the right of way of cars coming from behind. Reasonable care must be exercised in ascertaining their presence in the passing lane. The precautions above stated must then be taken.' *Verrill* v. *Harrington,* 131 Me. 390, 395, 163 A. 266, 268; *Reid et al.* v. *Walton et als.,* 132 Me. 212, 168 A. 876."

It is apparent that the jury could not have given proper consideration to the legal duties which governed the facts here presented. "Uncontroverted and undisputed physical facts may completely override the uncorroborated oral testimony of an interested witness which is completely inconsistent with those physical facts, and natural and physical laws have universal application and may not be disregarded." *Jordan* v. *Portland Coach Co.,* 150 Me. 149, 158. This verdict which exonerates the plaintiff driver from all contributory negligence cannot stand.

The verdict awarded the plaintiff passenger in the amount of $500 is attacked as excessive. Defendant concedes that it is otherwise supported by evidence. As to plaintiff's injuries, there were no objective symptoms, but there was evidence of pain in the chest continuing ten months to the time of trial, coupled with some alleged incapacity for work. The verdict seems high but we cannot say that it is so high as to be manifestly unreasonable or excessive.

The entry will be

> *In both cases, exceptions sustained.*
> *In the case of Stanton White v. Schofield, motion granted, new trial ordered.*
>
> *In the case of Michael White, pro ami v. Schofield, motion denied.*