GARFIELD BEAL
*vs.*
LESTER WOOD, ET AL.

Cumberland.  Opinion, October 5, 1960.

*Basil Latty*, for plaintiff.

*Robinson, Richardson & Leddy*, for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J.   This action in tort comes to this court upon plaintiff's exception to a directed verdict for the defendant. The directed verdict was based on the ground that the plaintiff was guilty of contributory negligence.

On September 18, 1957, the plaintiff was operating a small truck in a general southerly direction on Route #35 in Standish, Maine.  The defendant was operating an automobile on the same highway and in the same direction. Route #35 is a two lane, black top road, the lanes being

delineated by a broken white line. The plaintiff attempted to make a left-hand turn into his driveway on the easterly side of the highway, and a collision occurred between the two vehicles. The highway in both directions from the place of collision was straight and without obstructions.

In the trial of the case the plaintiff had the burden of proving negligence of the defendant and due care on his own part.

We are here concerned only with the question of whether the plaintiff was guilty of contributory negligence as a matter of law. There is no necessity to discuss the question of negligence on the part of the defendant. If the plaintiff was guilty of negligence which contributed to his injuries, then he cannot recover, although the defendant might also have been negligent.

The story of the accident as given by the plaintiff is that when about 200 feet from his driveway, he signaled to make a turn into the driveway. At that time there were two cars about eight hundred or a thousand feet behind him. We now quote from plaintiff's testimony.

"Q. Now before you turned left did you notice any vehicles behind you?

A. Yes, there were two cars coming behind me.

Q. And where were they at that time?

A. Well, at that time, just as I started to turn the wheels, I would say, at that time they were four hundred feet or a little better back of me.

Q. And how were they spaced?

A. They were very close.

Q. Close to what?

A. There was one that had just started to come out behind the other.

Q. Could you tell us which lane on the highway they were on at that time, the easterly or westerly?

A. Well, the Wood car was on the left side.

Q. Just a moment. There is a broken center line on Route 35 in the vicinity of the Beal driveway, is that correct?

A. I don't understand.

Q. There is a broken center line?

A. Yes, a white strip in the road.

Q. We will call the westerly side of that center line the westerly lane and the easterly side of that center line the easterly lane. Now where was the Wood car just before you began to make your turn?

A. Well, before I made the turn he was on the easterly side, the Wood car.

Q. And where was the other car?

A. The other car was on the other side.

Q. Now did you make your left turn?

A. I made my left turn.

Q. What happened to the other car?

A. The other car passed on the right. Mr. Wood didn't - - -

MR. LEDDY: I object to this witness testifying to something that he didn't see and which, in the nature of things, he probably couldn't see.

(Last question read by the reporter)

THE COURT: If you know, Mr. Beal, if you have your own knowledge on the subject, you may answer.

A. I saw the other car pass, that is true.

Q. (By Mr. Latty)  Passed you?

A. Passed me on the right, so help me.

Q. You mean on the westerly side?

A. Yes.

Q.  What happened to the Wood car?

A.  Just as that car passed me, almost the same time he hit me in the rear of the truck.

Q.  What part of the truck did he hit?

A.  He hit the tail-gate part of the left side.

Q.  Do you want to tell me how the tail-gate was at the time of impact?

A.  The tail-gate was out to make the truck longer.

Q.  Extended horizontally?

\*  \*  \*  \*  \*

Q.  Now where were you in the highway when the Wood car struck you, where was your car?

A.  I was turning in.

Q.  Was any part of your car in the westerly lane?

A.  No.

Q.  Where was it?

A.  It was over on the left.

Q.  In the easterly lane?

A.  Sure."

The deposition of Albert F. Denette was introduced by the plaintiff. He testified that he was driving on Route #35 at the time of the accident and that he drove at the rear of two cars, one of which was the defendant's car. He testified that the defendant's car was endeavoring to pass the other car. The defendant's car was travelling along the highway at a rate of speed of 55 to 60 miles an hour. We quote from his testimony.

"Q.  So that if you were 1500 feet from the accident, and they were 1,000 or 1500 feet ahead of you, is it fair to say that they were pretty close to the Beal car?

A.  I would say yes.

Q.  When the Beal car turned left?

A.  Right.

> Q. Should we also understand that when the Beal car turned left that the Wood car was abreast of this unidentified car?
>
> A. It wasn't quite abreast, but pretty close to it.
>
> Q. In any event, the Wood car was occupying the easterly lane of Route 35, is that correct?
>
> A. Yes.
>
> Q. That is when you saw the Beal truck turn left?
>
> A. Yes."

There is no evidence in regard to the width of the highway. However, photographs of the highway, with tire marks of defendant's vehicle showing, were admitted in evidence. Comparing the width of the tire marks with the width of the highway as shown on these exhibits, it must be concluded that the highway was not over thirty feet in width. Taking the evidence in the light most favorable to the plaintiff he could not have travelled over twenty feet, at the most, after making his turn, at a speed he himself estimates at approximately ten miles per hour, before being struck. If the plaintiff's story is correct, the defendant must have been travelling at least twenty times as fast as the plaintiff in order to have come into collision with defendant's truck. This, of course, is highly improbable. No testimony was offered on behalf of the defendant, but the only conclusion to be reached from the entire evidence in the case, considering it in the light most favorable to the plaintiff, is that the plaintiff either failed to look to his rear as he started to make his turn to the left, or that he grossly misjudged the distance between his vehicle and that of the defendant's at the time the turn was started.

It is familiar law in this jurisdiction that the operator of an automobile intending to cross the right of way of cars coming from behind has the duty of so watching and timing the movements of the other car as to reasonably insure himself of a safe passage either in front or rear of such

car, even to the extent of stopping and waiting if necessary. *White* v. *Schofield,* 153 Me. 79, 134 A. (2nd) 755, *Verrill* v. *Harrington,* 131 Me. 390, 395, 163 A. 266.

We must conclude that the plaintiff was guilty of contributory negligence as a matter of law and that the verdict directed for the defendant was proper.

The entry will be

*Exceptions overruled.*