RAYMOND E. SMITH

*vs.*

DONALD DRINKWATER

Penobscot.   Opinion, November 13, 1962.

*Abraham J. Stern,*
*John Evans Harrington,* for the Plaintiff.

*John A. Platz,* for the Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WEBBER, J. This was an appeal by plaintiff from a judgment ordered by the court below for the defendant notwithstanding a verdict for the plaintiff. The plaintiff was the only witness on the issue of liability so that his testimony constitutes the evidence most favorable to him and the facts are not in dispute.

The plaintiff was employed by one Thayer and was engaged in the loading and transportation of logs. The defendant was the owner of a truck being used for the purpose and was also participating with Thayer and the plaintiff in the loading operation. The defendant operated a crane attached to the vehicle which lifted the logs from the ground to the truck. The plaintiff and Thayer did the work of attaching the hoist chains to the logs and assisting in placing the logs on the truck and releasing the hoist chains. There were fifteen logs involved, the size of which is not disclosed by the record. They were loaded in the form of a pyramid with five on the bottom tier and one at the top. After the top log was dropped into place by the crane, the boom of the crane as it swung sideways knocked the log askew with one end outside the groove formed by the two logs comprising the next to the top tier. The plaintiff called the defendant's attention to the position which the log had assumed and the defendant replied that they "would put some bind chains around it and let it go and watch it." The plaintiff

made no further comment, suggestion or objection to the defendant or to his employer, Thayer. The plaintiff worked on the top of the load and at times on the top log itself but it did not move or change position. Three binding chains were passed over the top of the load and made fast. Plaintiff then left with the load and drove approximately 130 miles to the mill. Neither the defendant nor Thayer accompanied him. From time to time during the trip the plaintiff checked his load but he arrived at his destination without incident, the top log still remaining in the exact position in which it had been loaded. Upon arrival the load was scaled by a third party and the plaintiff then began his preparations for unloading. He released all three binding chains and pulled two of them off the load. When he started to remove the third chain he was at the side of the truck just back of the cab. He relates that as he pulled the third chain clear he was looking at the top log, the position of which he considered to be dangerous. He testified that he kept his attention fixed on the log as he started to pull the chain over but he did not see it move. The log fell rapidly over the side of the truck striking the plaintiff and inflicting very severe injuries to his person.

It is apparent from the record that the defendant and the plaintiff did not stand in the relationship of employer and employee. The complaint recites and the evidence clearly shows that plaintiff was employed only by Thayer. The plaintiff made no effort to prove the interest of the defendant in the loading and hauling operation. As above stated, the defendant did own the truck and he did participate in the loading. Whether he furnished the truck and his own services to Thayer for hire or was a gratuitous bailor and helper or was a fellow servant employed by Thayer does not appear and we cannot conjecture. The applicable law must therefore be applied as though plaintiff and defendant were strangers in this transaction. Cases based upon the duty of an employer to his employee have no application here. We

note, however, that even if evidence had been introduced tending to prove an employment relationship between the parties, the plaintiff would still have been barred from recovery. *Blacker* v. *Oxford Paper Co.*, 127 Me. 228, 231; *Millett* v. *Railroad Company*, 128 Me. 314; *Merrill* v. *Wallingford*, 154 Me. 345, 350. The limitations upon the exercise by the plaintiff of a free and voluntary choice which based the decision in *Reid* v. *Steamship Co.*, 112 Me. 34, were not present in the instant case.

We express some doubt as to whether any negligence of the defendant was the proximate cause of the plaintiff's injury. We have had occasion to consider the element of *legal foreseeability* in negligence cases. *Hatch* v. *Globe Laundry Co.*, 132 Me. 379; *Hersum, Admr.* v. *Kennebec Water District*, 151 Me. 256. Assuming some negligence on the part of the defendant initially in leaving the top log askew on the load, was it legally foreseeable that that log, after riding over the highway for many miles and arriving at its destination apparently secure and unmoved from its original position, would during the unloading process conducted by a skilled and experienced person fall and cause injury to anyone? If a person having experience in the loading and hauling of logs, in the exercise of ordinary care, would reasonably and properly conclude at the destination point that this log was sufficiently well lodged and supported so as to be in no apparent danger of falling from the load, then its actual fall was not a foreseeable consequence of the loading error and the defendant's negligence was not a proximate cause of the accident as a matter of law. We note that the plaintiff testified that he felt that if the log had traveled 130 miles and he had pulled the other two chains over, it was safe enough to pull the third one. He also disclosed that he was a person experienced in the loading and trucking of logs. We pass this question, however, because the issue of the plaintiff's contributory negligence is determinative in this case.

Assuming without deciding that defendant's negligence was a proximate cause of the injury, the plaintiff was clearly at least as much at fault as the defendant. Plaintiff was admittedly aware of a possible danger or hazard arising from the position of the top log, the very danger upon which he rests his case against the defendant. The plaintiff's duty to exercise due care for his own safety was discharged only if his care and caution were commensurate with the risk and hazard confronting him. Where the risk is great, the person must be especially cautious. Ordinary care depends on the circumstances of each case. *Albison, et al.* v. *Robbins & White*, 151 Me. 114, 122. The plaintiff participated in the loading operation working on top of the load. He stood upon the top log after it was laid in place. As already noted, he was experienced in the loading and trucking of logs. Although he called the defendant's attention to the fact that the top log was somewhat askew, he made no demand that the log be moved. He made no complaint to his own employer but proceeded with the work of securing the load without further comment or suggestion. When he arrived at his destination he noted that the log had not changed position during the long trip. Nevertheless he says that he was "beware" or "scared" of it and felt that it presented a danger. There were men working in the yard at the destination point but he made no request for assistance in unloading. A scaler arrived and estimated the quantity in the load but the plaintiff made no request to him for any aid or help. He voiced no objection to proceeding alone to begin the unloading process. Although the destination was a lumber mill where loads of lumber were undoubtedly frequently delivered and where tools and devices useful in handling logs are ordinarily available, the plaintiff made no effort whatever to secure or make use of any such tools or devices which might serve to prevent the top log from moving after it was released from the binding chains. The plaintiff's own explanation of what he did do is unsatisfactory and in

fact conclusive as to his own lack of due care for his own safety. As he pulled the last chain over the load, he says he kept his eyes fixed on the top log as a possible source of danger. Yet he cannot say when or why it started to move or what course it took as it came toward him. We think it fair to infer that these logs were of substantial weight and size in view of the fact that only fifteen logs comprised the load, that they were stacked in pyramid form, and that the fall of only one log was the cause of such serious injury to the body of the plaintiff indicative of great force and violence. It is incredible that a log of such size resting in a state of immobility poised on the top of the load could start to move and instantaneously gather such speed that a person looking at it could not follow its movement with his eye or take any action for his own safety. In this respect the plaintiff was in no different case than the operator of a motor vehicle, of whom it has been so often said that one must look and be vigilant to apprehend the dangers of the highway. But mere looking will not suffice. One is bound to see that which an ordinary and reasonably prudent person would see under the same or similar circumstances. So this plaintiff with his attention directed to what he knew or believed to be a point of danger had a duty to look and to see that which was readily apparent and to take reasonable precautions for his own safety. *Morrissette* v. *Cyr*, 154 Me. 388; *Gregware* v. *Poliquin*, 135 Me. 139, 143; *White* v. *Schofield*, 153 Me. 79, 87. It is obvious upon this record that the plaintiff failed to take any action whatsoever to assure his own safety either before or at the moment the log fell, and the price of his failure was grievous injury to himself. The defendant was not an insurer of the safety of the plaintiff and on no other theory could he be made to respond to the plaintiff in damages. The justice below could do no other than to order judgment for the defendant.

*Appeal denied.*