STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-21-66

JEANINE MAY,

     Plaintiff,

v.

HUY TRIEU,

     Defendant

**ORDER**

REC'D CUMB CLERKS OF
SEP 2 '21 PM 8:29

Before the court is plaintiff Jeanine May's motion for attachment. The court held oral argument on August 12, 2021. One of the reasons for oral argument was that counsel for Ms. May had submitted significant additional evidence with her reply papers, and counsel for defendant Huy Trieu was entitled to an opportunity to respond.[1]

A court shall order an attachment if it finds that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any available insurance or other security. M.R. Civ.P. 4A(c), 4B(c). This cases arises out of an accident in which Ms. May was seriously injured while running on the Church Road in Brunswick when she was struck by a vehicle driven by Dr. Trieu. The motion for attachment has been filed because it is not disputed that Dr. Trieu's insurance will only cover damages up to a limit of $100,000 and Ms. May's medical expenses alone exceed that figure by a considerable amount.

This motion is particularly difficult because the parties have submitted very little evidence on how the impact occurred. There are no affidavits from either Ms. May or Dr. Trieu,

---

[1] Like many cases, the resolution of this motion has been delayed by the pandemic. The pending motion was fully briefed on March 25, 2021. Since then the court has had almost no time to devote to civil proceedings due to the pandemic and the need to focus on criminal cases and was unable to schedule a hearing until August 12.

and there were apparently no other witnesses to the accident.[2] Aside from the basic facts of the accident, the court is largely left with inferences, the statutory provisions governing drivers and pedestrians, and the general principle that drivers and pedestrians must take due care for the safety of themselves and others and are obliged to see what is there to be seen.

Liability

The accident occurred in daylight at around 7:00 am on January 13, 2021. The court can take judicial notice that sunrise on that date occurred at approximately 7:12 am, but there was enough light to see. At that location, the Church Road is relatively straight and flat with no sidewalk and with fields on either side. There are no houses in the immediate vicinity of where Ms. May was hit by Dr. Trieu's vehicle.

The record contains photographs showing that, at the location of the crash, there was a dirt shoulder approximately 3 feet wide. Approximately the first 1.5 feet of the shoulder nearest the paved road was bare dirt. The remainder of the shoulder was crusted with snow. Those photographs also show that that stretch of roadway was a no passing zone, although the roadway appears to have been wide enough so that a vehicle hugging the centerline could have passed a pedestrian walking on the edge of the roadway without leaving its lane.

Dr. Trieu was driving to work, and his vehicle was travelling north on the Church Road. The posted speed limit was 40 miles per hour, and there is no evidence that Dr. Trieu was speeding. Ms. May is a runner, and was running south in the northbound lane facing oncoming traffic. There is no evidence that Dr. Trieu's vehicle left the paved portion of the roadway and traveled onto the shoulder.

---

[2] The court understands that when the motion was filed, Ms. May was beginning rehabilitation and was not able to provide an affidavit. For his part, Dr. Trieu did not submit an affidavit because a criminal investigation is still underway. There has been a suggestion that for purposes of this motion the court should consider drawing an adverse inference against Dr. Trieu pursuant to M.R.Evid.513(b). The court has not done so for several reasons. There has not yet been any formal invocation of the privilege against self-incrimination, and Dr. Trieu may ultimately not assert the privilege. Moreover, as set forth below, the court has found that it is likely that Ms. May will recover judgment in this case without the need for any adverse inference.

2

Ms. May was hit by the extreme right front portion of Dr. Trieu's vehicle. This is confirmed by photographs attached to the affidavit of Wade Bartlett showing damage from the right front bumper to the right front door handle.[3] The major injuries sustained by Ms. May were to her right side, indicating she had been facing Dr. Trieu's vehicle when she was struck.

There is a photo designating where Ms. May was lying after the impact, and the court estimates that this was approximately 7-8 feet from the edge of the pavement. From all of the above, the court infers that the impact occurred in the northbound lane near the edge of the pavement and that as a result of the impact, Ms. May's body was thrown to the side of the road.

According to Brunswick Patrolman Joshua Bernier,[4] he was dispatched to the scene at 7am after Dr. Trieu felt his vehicle hit something, turned around, saw Ms. May, and called 911. Bernier reported that Dr. Trieu stated that he had seen Ms. May running from a distance prior to the accident and, at the scene, was attempting to remember the chain of events prior to the impact. Dr. Trieu also stated that he had been listening to a podcast, that he vaguely remembered a vehicle coming from the other direction, and that he may have been drinking a smoothie.

The governing statutory provisions are contained in 26 M.R.S. § 2056. Section 2056(2) provides as follows:

> Where sidewalks are not provided, a pedestrian shall walk facing approaching traffic on the left side of the public way or on the way's shoulder when practicable. An operator of a motor vehicle who is passing a pedestrian on a public way or on the way's shoulder shall exercise due care by leaving a distance between the motor vehicle and the pedestrian of not less than 3 feet while the motor vehicle is passing the pedestrian. A motor vehicle operator may pass a pedestrian in a no-passing zone only when it is safe to do so.

---

[3] Bartlett's affidavit also attaches a crash report and a press release from the Brunswick Police. These items are inadmissible and although Bartlett may be allowed to say that as an expert he consulted the crash report, that does not make it admissible. *See Henriksen v. Cameron*, 622 A.2d 1135 (Me. 1993). The crash report and press release have been disregarded by the court.

[4] Ms. May's reply papers on the instant motion included a March 16, 2021 affidavit from Patrolman Bernier and a prior January 15, 2021 search warrant affidavit by Patrolman Bernier.

Section 2056(8) then provides in pertinent part as follows:

> Notwithstanding other provisions of this chapter or of a local ordinance, an operator of a motor vehicle shall:

> A. Exercise due care to avoid colliding with a pedestrian

The court agrees with counsel for Dr. Trieu that the first sentence of § 2056(2) means that a pedestrian is supposed to walk on the shoulder whenever that is practicable – not that the pedestrian has the option of walking on either the left side of the way or on the shoulder. In this case it appears that a person could have walked on the portion of the shoulder that was closest to the pavement. However, runners typically want to run on the pavement, where there is better footing. Pursuant to § 2056(8) and the last two sentences of § 2056(2), regardless of whether a runner is on the shoulder or facing approaching traffic on the left side of the roadway, the operator of a motor vehicle needs to leave a three foot distance from a runner when passing, may not pass in a no passing zone unless it is safe to do so, and is required to exercise due care to avoid a collision.

This puts greater responsibility for avoiding a collision on the motor vehicle operator than on the runner. In this case there is also some evidence that Dr. Trieu was distracted. On this record, therefore, it is more likely than not that Dr. Trieu, having originally seen Ms. May approaching, will be found to have negligently caused the collision and the injuries to Ms. May..

At the same time, however, Ms. May also had a duty to use reasonable care to protect herself. Counsel for Ms. May correctly argues that Ms. May had no duty to anticipate negligent operation by Dr. Trieu. However, that principle only applies "until circumstances develop which show the assumption to be unwarranted." *Blaisdell v. Reid,* 352 A.2d 756, 758 (Me. 1976) (emphasis in original). A runner in the lane facing the flow of traffic must exercise due care in

4

watching for approaching vehicles. In this case, absent evidence that Dr. Trieu's vehicle suddenly swerved toward Ms. May (and there is no such evidence on this record), it is more likely than not that Ms. May will be found to have been negligent in not seeing in time that Dr. Trieu's vehicle was approaching too closely and moving out of the way. It is notable that counsel for Ms. May has submitted an affidavit attesting that Ms. May had a habit of running as close to the edge of the roadway as possible and moving onto the shoulder in the exercise of due care when a car approached. Based on the only evidence before the court, the January 13, 2021 collision occurred on the pavement, and Ms. May should have been watching for any approaching vehicle but did not exercise due care by retreating to the shoulder.

However, based on this record, the court finds that it is likely that the negligence of Dr. Trieu substantially exceeded that of Ms. May and that Ms. May will therefore be entitled to a judgment reduced to some extent by comparative negligence.

Damages

The record reflects that as of the date of the motion for attachment, Ms. May's medical expenses have already amounted to approximately $1,000,000. It does not appear to be disputed that she has lost income totaling at least $50,000. These figures are likely to increase but, as discussed below, the court has no evidence on which to calculate any figure for those increases.

Counsel for Ms. May has submitted an affidavit of Attorney David Lipman, offered as an expert witness, estimating Ms. May's damages at a minimum of $ 2.5 million. The problem with this is that, despite the court's respect for Attorney Lipman, it agrees with counsel for Dr. Trieu that the estimated size of a verdict is not a subject on which the court can credit an estimate offered by a retained attorney, offered as an expert, both for the reasons stated at the hearing and because the attorney's estimate in this case includes opinions which an attorney does

not have the credentials to offer – such as whether and to what extent Ms. May will have a permanent impairment and what she may require in terms of further surgery and future medical treatment.[5]

The uncertainty as to Ms. May's prognosis is demonstrated by a statement from one of Ms. May's physicians that although she faces a need for considerable further treatment and her cognitive functions were still being assessed, "the critical care team is hopeful that she will have a good mental and physical recovery." Affidavit of Jordan Caffe included as part of Exhibit A to Steven May affidavit.

This is not to understate Ms. May's damages. The court agrees that the injuries in this case are very extensive, as set forth in paragraph 11 of Steven May's affidavit and including fractures of Ms. May's femur, pelvis, face, jaw, and shoulder, an intercranial hemorrhage, head injury with loss of consciousness, loss of one kidney, and injuries to her chest and colon.

As of the filing of the motion she had been transferred from Maine Medical Center to the New England Rehabilitation Hospital. It follows that Ms. May will have additional medical expenses and that those may be significant, but the court has no basis on which to calculate or estimate those expenses. Ms. May will also have additional damages for lost income but the court is similarly without a basis to calculate that figure.

Finally, Ms. May is likely to recover very substantial damages for pain, suffering, emotional distress, and loss of enjoyment of life. However, the court has looked through the medical records submitted by counsel for Ms. May and has not found any references to the pain she experienced, nor has counsel identified any specific references in the medical records to

---

[5] Attorney Lipman may very well be correct as to his predictions, and his estimate may be understated, but the court has to base its finding on evidence rather than supposition.

6

pain. There is also no evidence in the record with respect to the emotional distress that Ms. May has undoubtedly suffered or any evidence as to her loss of enjoyment of life.

The Law Court has required that a party needs to make a specific showing of damages to support an attachment. *Bowman v. Dussault*, 425 A.2d 1325, 1329 (Me. 1981). The *Bowman* decision concerned a case in which an attachment had been granted to a plaintiff who had been a passenger in a collision caused when another vehicle had failed to yield the right of way at an intersection. The plaintiff had submitted an affidavit stating that she had suffered severe facial lacerations, hospitalization, and surgery and had extensive facial scarring. Her affidavit said that she had been advised by her physicians that additional surgery would be necessary. Her affidavit also stated that as a result of her injuries, she would be greatly impaired in pursuing her occupation as a model and dance instructor. 425 A.2d at 1327.

The Law Court noted that because prejudgment attachment can work a serious hardship on the defendant before the merits of the plaintiff's case can be resolved, the attachment rule must be strictly adhered to. 425 A.2d at 1328. It agreed that the trial court had been correct in concluding that plaintiff was likely to obtain a judgment against the defendant but vacated the attachment because of the requirement in the attachment rule that the affidavits supporting an attachment shall set forth "specific facts sufficient to warrant the required findings." *See* M.R.Civ.P. 4A(i). Because the plaintiff had only set forth the general nature of her prospective damages, she had not made a showing with the specificity required. 425 A.2d at 1328–29.[6]

---

[6] The *Bowman* decision predated the change in the attachment rules to a "more likely than not" standard but its requirement that damages must be specifically shown has not been undermined by that change. If anything, the requirement that damages must be specifically shown has been reinforced by the change to a "more likely than not" standard.

7

*Bowman* suggests that the court cannot base an attachment on future medical expenses and lost earnings unless it has evidence on which it can make an "informed projection" of those losses. Such evidence is absent in this case.

However, subsequent cases have indicated that emotional distress falls in a different category. In *Vogt v. Churchill*, 679 A.2d 522, 524 (Me. 1996), the Law Court noted that although emotional distress damages are not susceptible to quantification by expert testimony or other evidence, an attachment can be based on the nature of the emotional distress described in affidavits. In *Vogt* there was an affidavit outlining the extreme emotional distress that the plaintiff had suffered. *See* 679 A.2d at 524. There is no similar evidence in this case. Nevertheless, in *Jacques v. Brown*, 609 A.2d 290, 292-93 (Me. 1992), the Law Court suggested that in certain cases emotional distress is sufficiently likely that an attachment can be granted even without some of the specific evidence that would otherwise be required.

The court finds that there is a sufficient basis in this case to conclude that – at an absolute minimum – Ms. May will be likely to recover damages of $250,000 for emotional distress caused by the extensive injuries she has suffered and her prolonged hospitalization (much of that intubated) and rehabilitation.

Combining that figure with Ms. May's existing medical expenses of $1,000,000 and her lost wages to date of $50,000 would lead to a total of $1,300,000 from which must be deducted the $100,000 in insurance that is available and an amount based on comparative negligence. The court estimates, based on the existing record and recognizing that the record is far from complete, that $195,000 would likely be deducted based on comparative negligence.

Accordingly, attachment is ordered against Dr. Trieu in the amount of $1,005,000.

The entry shall be:

1. The court finds that it is more likely than not that plaintiff Jeanine May will recover judgment against defendant Huy Trieu in an amount which exceeds available insurance by at least $1,005,000.

2. Attachment including attachment by trustee process is hereby granted in favor of plaintiff Jeanine May and against defendant Huy Trieu in the amount of $ 1,005,000.

3. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: September ＿Ｚ＿, 2021

                                      Thomas D. Warren
                                      Justice, Superior Court

**Entered on the Docket: 09/02/21**

                                              MCV

Plaintiff–Lauri Boxer–Macomber, Esq. and
Timothy Norton, Esq.
Defendant–John Veilleux, Esq., Samuel Johnson, Esq.
and Mark Franco, Esq.

9